Greg Harold Greubel
  (NJ Bar No. 171622015)
James C. Grant*
  (WA Bar No. 14358)
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
greg.greubel@thefire.org
jim.grant@thefire.org

Daniel A. Zahn*
  (DC Bar No. 90027403)
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
daniel.zahn@thefire.org


*Pro hac vice motions pending

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GAIL NAZARENE**, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:25-cv-17770 |
| **KEVIN DEHMER**, as New Jersey Department of Education Commissioner; | |
| **ROBERT W. BENDER**, as New Jersey School Ethics Commission Chairperson; | **BRIEF SUPPORTING PLAINTIFF'S PRELIMINARY INJUNCTION MOTION** |
| **MICHAEL CARUCCI**, **MARK J. FINKELSTEIN**, **DENNIS ROBERTS**, **CAROL E. SABO**, and **RICHARD TOMKO**, as New Jersey School Ethics Commission members, | Motion day: December 15, 2025 |
| *Defendants*. | Oral argument requested |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................... 1

STATEMENT OF FACTS ................................................................. 4

    A.    The School Ethics Commission interprets the School Ethics Act to prevent school board members from speaking freely on matters of public concern. ..................................................... 4

    B.    The state has continued to enforce its interpretation of the School Ethics Act by punishing board members who discuss matters of public concern. ...................................................... 7

    C.    Nazarene speaks to her constituents online about board matters of public concern. ...................................................... 11

    D.    Nazarene has stopped speaking publicly or engaging with her constituents because of the state's interpretation and enforcement of the School Ethics Act. .................................... 14

ARGUMENT .................................................................................. 16

I.    Nazarene has pre-enforcement standing ........................................ 18

II.    Nazarene is entitled to a preliminary injunction .......................... 24

    A.    Nazarene is likely to succeed on the merits. ......................... 25

        1.    The First Amendment fully protects Nazarene's speech ................................................................................ 25

        2.    The School Ethics Act, as applied to Nazarene's intended speech, violates the First Amendment because it is content based and fails strict scrutiny .... 27

    B.    The three other factors favor a preliminary injunction ........ 35

III.    The Court should waive the bond requirement. ........................... 36

CONCLUSION ............................................................................... 37

# TABLE OF AUTHORITIES

## Cases

*Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*,
  39 F.4th 95 (3d Cir. 2022) ..................................................................36

*Babbitt v. Farm Workers*,
  442 U.S. 289 (1979) .........................................................................18

*Bey v. Brown*,
  No. C25-11 (Sch. Ethics Comm'n Dec. 20, 2011) ................................21

*Bond v. Floyd*,
  385 U.S. 116 (1966) ............................................................2, 22, 26, 30

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786 (2011) ..........................................................................32

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ..............................................................................26

*Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*,
  101 F.4th 266 (3d Cir. 2024) ...................................................27, 29, 31

*City of Austin v. Reagan Nat'l Advert. of Aus., LLC*,
  596 U.S. 61 (2022) ............................................................................27

*Const. Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ...............................................................22

*Edenfield v. Fane*,
  507 U.S. 761 (1993) ..........................................................................35

*Fisher v. Univ. of Tex. at Aus.*,
  570 U.S. 297 (2013) ..........................................................................29

*Greater Phila. Chamber of Com. v. City of Philadelphia*,
  949 F.3d 116 (3d Cir. 2020) ...............................................................24

*Hou. Cmty. Coll. Sys. v. Wilson*,
  595 U.S. 468 (2022) ...................................................................1, 26, 37

*Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*,
 512 U.S. 136 (1994) ................................................................................35

*In re Hollander*,
 No. C49-07 (Sch. Ethics Comm'n Feb. 24, 2009) ...................................22

*In re Skurbe*,
 No. C75-21 (Sch. Ethics Comm'n July 22, 2025) ........................9, 19, 21

*In re Treston*,
 No. 208-21 SEC (Comm'r of Educ. Sept. 30, 2021).....................9, 31, 34

*In re Treston*,
 No. C71-18 (Sch. Ethics Comm'n Apr. 27, 2021) .................8, 19, 21, 22

*Kwapniewski v. Curioni*,
 No. C70-17 (Sch. Ethics Comm'n Dec. 17, 2019) ..................................21

*Lindke v. Freed*,
 601 U.S. 187 (2024) ...................................................................32, 33, 34

*Linmark Assocs., Inc. v. Willingboro Twp.*,
 431 U.S. 85 (1977) ..................................................................................35

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007) ................................................................................18

*Melnyk v. Fiel*,
 No. C64-18 (Sch. Ethics Comm'n Mar. 26, 2019). ................................21

*Meyer v. Grant*,
 486 U.S. 414 (1988) ................................................................................25

*Mills v. Alabama*,
 384 U.S. 214 (1966) ................................................................................26

*N.J. Bankers Ass'n v. Att'y Gen. N.J.*,
 49 F.4th 849 (3d Cir. 2022).................................................18, 19, 20, 23

*Nat'l Shooting Sports Found. v. Att'y Gen. N.J.*,
 80 F.4th 215 (3d Cir. 2023)....................................................................20

*New York Times Co. v. Sullivan,*
  376 U.S. 254 (1964) ................................................................26

*Nken v. Holder,*
  556 U.S. 418 (2009) ................................................................24

*Pinto v. Cusato,*
  No. 445-25SEC (Comm'r of Educ. Sept. 12, 2025)................................10

*Pinto v. Cusato,*
  No. C74-23 (Sch. Ethics Comm'n July 22, 2025)................10, 19, 21, 31

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ............................................................27, 28

*Reilly v. City of Harrisburg,*
  858 F.3d 173 (3d Cir. 2017) ............................16, 24, 31, 35

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
  592 U.S. 14 (2020) ................................................................36

*Smith v. City of Atl. City,*
  138 F.4th 759 (3d. Cir. 2025) ................................................35

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ................................................................18

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ............................................18, 20, 22, 23

*Temple Univ. v. White,*
  941 F.2d 201 (3d Cir. 1991) ................................................36

*Turner Broad. Sys., Inc. v. FCC,*
  512 U.S. 622 (1994) ................................................................29

*United States v. Playboy Ent. Grp., Inc.,*
  529 U.S. 803 (2000) ................................................................29

*Werkheiser v. Pocono Twp.,*
  780 F.3d 172 (3d Cir. 2015) ................................................30

*Whitney v. California,*
  274 U.S. 357 (1927) ...............................................................................35

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ...................................................................16, 24, 35

*Wood v. Georgia,*
  370 U.S. 375 (1962) ...............................................................................26

**Statutes**

N.J.S.A.
  § 18A:12-23 ...............................................................................................4
  § 18A:12-24 ...............................................................................................4
  § 18A:12-24(b) ......................................................................................4, 19
  § 18A:12-24.1 ............................................................................................4
  § 18A:12-24.1(b) ......................................................................................4
  § 18A:12-24.1(c) ..................................................................................5, 13
  § 18A:12-24.1(d) ..................................................................................4, 13
  § 18A:12-24.1(e) .............................................................................5, 13, 19
  § 18A:12-24.1(f) ..................................................................................5, 19
  § 18A:12-24.1(g) ..................................................................................5, 13
  § 18A:12-29 ...............................................................................................7
  § 18A:12-29(a) .........................................................................................23
  § 18A:12-29(c) ......................................................................................7, 8

## INTRODUCTION

Alloway Township residents elected Plaintiff Gail Nazarene to represent them on the school board. To be a good representative, Nazarene wants to speak with them about issues concerning the school. For example, she wants to solicit views about school taxes, funding, budgets, and operations. Alloway is considering a proposal to combine its school into a regional school district, and Nazarene wants to share her hesitations about the plan with her constituents and hear their thoughts in return. In other words, Nazarene wants to exercise her First Amendment "right to speak freely on questions of government policy." *Hou. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022).

But the New Jersey Commissioner of Education and School Ethics Commission (collectively, the state) have enforced New Jersey's School Ethics Act, N.J.S.A. §§ 18A:12-21–12-34, to preclude school board members from speaking publicly about school issues, even if board members clarify they are speaking only in a personal capacity. According to the state, the School Ethics Act also prevents board members from speaking about school issues online, including on social media.

Under the state's interpretation, the School Ethics Act prevents Nazarene and thousands of other elected school board members in New Jersey from speaking with constituents about issues of public concern. But the "manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966). The state cannot restrict elected officials' right to communicate with constituents, the very purpose of which is to effectively represent the people who elected them. *Id.* at 136–37.

Like many candidates, Nazarene campaigned for office on Facebook. After getting elected, she wanted to continue using Facebook to engage with constituents, and she made a few posts. But she was chilled from posting further by state pronouncements and rules that interpret the School Ethics Act to prohibit public communication by a board member about school issues. The state's interpretation was reinforced by directives from the New Jersey School Board Association, admonishments from the Alloway school board chair, and a complaint to the School Ethics Commission from another board member.

Nazarene wants to resume speaking freely with her constituents, and to do so as soon as possible. Since April, Nazarene has been prevented from exercising her First Amendment rights because she risks reprimand, censure, suspension, or removal if she communicates with constituents. To remove that risk, Nazarene brings this pre-enforcement challenge to the constitutionality of the School Ethics Act as applied to her speech on matters of public concern. To enable her to speak freely with her constituents again as soon as possible, she brings this motion for preliminary relief.

All the preliminary injunction factors favor Nazarene, as the School Ethics Act violates the First Amendment. As interpreted and enforced by the state, the Act is a content-based speech restriction that is not narrowly tailored to achieve a compelling government interest. And it is not the least restrictive means of achieving whatever legitimate interest the state might have. Nazarene is therefore likely to succeed on the merits of her First Amendment claim. The other factors also favor preliminary relief: Nazarene's ongoing loss of constitutional rights constitutes irreparable harm, the state suffers no harm from not enforcing the law unconstitutionally, and the public interest supports

protecting the First Amendment. This Court should therefore preliminarily enjoin the state and allow Nazarene to speak freely about the school policy that she and her constituents care deeply about.

## STATEMENT OF FACTS

### A.    The School Ethics Commission interprets the School Ethics Act to prevent school board members from speaking freely on matters of public concern.

The School Ethics Act regulates elected school board members' conduct. Verified Compl. ¶ 14, Dkt. No. 1. For example, the Act provides that "school officials"[1] shall not have conflicts of interest. *Id.* § 12-24; *see, e.g., id.* § 12-24(b) ("No school official shall use or attempt to use his official position to secure unwarranted privileges, advantages or employment for himself, members of his immediate family or others.").

The Act also imposes a "Code of Ethics for School Board Members." *Id.* § 12-24.1. The code of ethics sets forth general principles such as that school board members will act "in terms of the educational welfare of children" and "to see that [schools] are well run." *Id.* § 12-24.1(b), (d). It also provides that board members will "confine [their] board action to

---

[1] Under the Act, local school board members are considered "school officials." N.J.S.A. § 18A:12-23.

4

policy making, planning, and appraisal," *id.* § 12-24.1(c); "recognize that authority rests with the board of education" and "make no personal promises nor take any private action that may compromise the board," *id.* § 12-24.1(e); not "use the schools for personal gain," *id.* § 12-24.1(f); and "hold confidential all matters pertaining to the schools which, if disclosed, would needlessly injure individuals or the schools," *id.* § 12-24.1(g).

Neither the School Ethics Act nor its code of ethics contains any provision or restrictions regarding communications by school board members with the public about nonconfidential school-related issues. Compl. ¶ 17. But the School Ethics Commission interprets the Act to prevent school board members from speaking freely on matters of public concern. Compl. ¶¶ 23–30.

In 2022, the commission issued a public advisory opinion regarding whether the Act prevents local school board members from posting information related to schools on social media. Compl. ¶ 23, Ex. A (2022 Advisory Op.). In the opinion, the commission said it "recognizes that board members do not abdicate their fundamental rights as citizens after they become members of a board of education, and this necessarily

includes the sacrosanct rights to freedom of speech and freedom of expression." *Id.* at 2. It also stated that it lacked "authority to regulate private conduct, including speech and postings on social media, that is unrelated to [a board member's] position on the Board and does not occur in [a board member's] capacity as a school official." *Id.* at 3. But the commission interprets "private conduct" narrowly, limiting it to "behavior and/or actions strictly taken as a 'private citizen'" unrelated to the school board or school issues. *Id.* at 3.

In other words, the commission asserts authority to regulate any local school board member's speech discussing any issue that is or might be considered by the school board. Compl. ¶ 26. Under the advisory opinion, the scope of the commission's proscriptive oversight of school board members' speech is therefore extensive, encompassing any discussion of school funding, budgets, personnel, management, operations, or curriculum. Compl. ¶ 27.

The commission asserts this authority to control school board members' speech even when board members provide disclaimers to make clear they are speaking in a personal capacity and not on the board's behalf. Compl. ¶ 28. In fact, the advisory opinion proclaims that "any

attempt to disclaim your speech (as being in your personal or private capacity) would likely be futile." 2022 Advisory Op. at 3. And it concludes with a warning that, if a local school board member engages with constituents online, "it will be difficult, if not impossible for you to avoid conduct that is violative of the Act (whether actual, or perceived)." *Id.* at 3.

The commission has not withdrawn, retracted, or revised the advisory opinion. Compl. ¶ 30. To the contrary, it has continued to interpret the School Ethics Act to prohibit school board members from using social media to communicate with and solicit views from constituents. Compl. ¶ 30.

### B. The state has continued to enforce its interpretation of the School Ethics Act by punishing board members who discuss matters of public concern.

In addition to interpreting the School Ethics Act through advisory opinions, the commission also enforces the Act through the ethics complaint process. N.J.S.A. § 18A:12-29. If the commission receives a complaint alleging a board member violated the Act or its Code of Ethics for School Board Members, the commission, by majority vote, determines whether the challenged conduct violates the Act or Code of Ethics. *Id.*

§ 12-29(c). If the commission determines a violation occurred, it must, again by majority vote, recommend to the Commissioner of Education the reprimand, censure, suspension, or removal of the board member who violated the Act or Code of Ethics. *Id.* § 12-29(c). The "commissioner [must] then act on the commission's recommendation." *Id.* § 12-29(c).

For years, the commission has punished school board members who communicate with the public online or in other publications about matters of public concern. Four years ago, for example, it recommended censure of board member Christopher Treston after he wrote an op-ed endorsing four candidates for the Randolph Township school board and opposing another candidate. *In re Treston* (*Treston I*), No. C71-18, slip op. at 1, 12 (Sch. Ethics Comm'n Apr. 27, 2021). In the op-ed, Treston clarified that "[t]he author is writing this endorsement on his own personal behalf. His opinions are his own." *Id.* at 2. But the commission determined Treston's disclaimer was insufficient because he had made "multiple references to his position on the Board and Board matters generally." *Id.* at 7.

The commissioner accepted the commission's reasoning that "while [Treston's] disclaimer noted that his views were his own, he failed to

make clear that the views expressed were not those of the Board." *In re Treston* (*Treston II*), No. 208-21 SEC, slip op. at 3 (Comm'r of Educ. Sept. 30, 2021) (reducing sanction to a reprimand).

More recently, the commission recommended a reprimand for elected Monroe Township Board of Education member Christine Skurbe for posting on a Facebook page views about school overcrowding, failed referendums to build a new school, extra spending for an appointed superintendent, and other issues. *In re Skurbe*, No. C75-21, slip op. at 2–6 (Sch. Ethics Comm'n July 22, 2025). Although Skurbe repeatedly included express disclaimers in her posts, clarifying, for example, that she was "speaking as a private citizen" and "not represent[ing] any official elected position" and that she was "posting as a private citizen … not affiliated with the Board of Education," *id.* at 4, 5, the commission concluded she should be sanctioned because she did not use disclaimers in *every* post and she used the word "we" to reference the board and school board issues, *id.* at 10.

Also a few months ago, the commission recommended a reprimand of board member Douglas Cusato, who serves on the Westwood Regional Board of Education, for a comment he made in a Facebook group about

book banning. *Pinto v. Cusato* (*Pinto I*), No. C74-23, slip op. at 1–2, 7 (Sch. Ethics Comm'n July 22, 2025). Although there was no issue before the Westwood school board regarding book banning, the commission determined Cusato should be sanctioned for "commenting on potential or future Board activities, including activities or actions that *could* come before the Board." *Id.* at 7 (emphasis added). The commissioner "concur[red] with the penalty recommended by the [commission] for [Cusato's] actions in making comments on social media that had the potential to compromise the board." *Pinto v. Cusato* (*Pinto II*), No. 445-25SEC, slip op. at 1 (Comm'r of Educ. Sept. 12, 2025).

The state's edict is also reinforced by the New Jersey School Board Association (NJSBA), a state entity that provides training, advocacy, and support to elected school board members. In a workshop the NJSBA held for school board members across New Jersey, it emphasized that board members should "NOT make Facebook posts expressing your opinion even if you state comments are as [a] 'public citizen.'" Compl. ¶ 50, Ex. B.

According to the NJSBA, school board members cannot express their views publicly because "[y]ou are either a Board member or not. Once you are elected you have Ethics Standards to follow, and your role

becomes different unlike that of citizens who are not on the Board." Compl. ¶ 51, Ex. B. "Comments as a 'Private Citizen' are futile and harm the district. You have a Code of Ethics to follow. Anything you state that is related to a student, staff member, policy or the operations of the School District can create a conflict and in turn violate Ethics." Compl. ¶ 51, Ex. B.

### C. Nazarene speaks to her constituents online about board matters of public concern.

Gail Nazarene moved to Alloway Township from Philadelphia eight years ago. Compl. ¶ 52. From early on she became an involved member of the community, participating actively in her church, helping to run volunteer programs, and serving on the Salem County Social Services Board. Compl. ¶ 52.

In November 2024, Alloway Township residents elected Nazarene to serve on the Alloway Township Board of Education for a three-year term starting February 2025 and ending December 2027. Compl. ¶ 53. When campaigning for the school board, Nazarene posted on Facebook to elicit input from Alloway residents about Alloway's school. Compl. ¶ 53. After her election, Nazarene wanted to continue speaking out and

reaching out to constituents about issues that mattered to her and that she believed were important to the community. Compl. ¶ 53.

For example, on March 20, 2025, Nazarene spoke during a public comment portion of an Alloway Township Committee meeting. Compl. ¶ 56. She addressed a proposed waste recycling plant and discussed the Alloway Township school. Compl. ¶ 56. She made clear that she spoke in her personal capacity and discussed only public information. Compl. ¶ 57. Days later, the Alloway school board president emailed Nazarene expressing disappointment that she spoke at the township committee meeting. Compl. ¶ 58. After the criticism, she has not spoken at any Alloway Township Committee meetings. Compl. ¶ 59.

Nazarene continued to use her personal Facebook page for community outreach after she was elected to the Alloway school board. Compl. ¶ 60. For example, on March 30, 2025, when the school board was considering whether to increase taxes for school funding, Nazarene asked Alloway residents through her Facebook page: "If taxes will need to be raised by 30% to keep the school open what is your opinion?" Compl. ¶ 61. Almost immediately, she received pushback from Alloway school officials, including from the Alloway school board president and from the Alloway

school superintendent, about her communications online asking constituents for their views. Compl. ¶¶ 62–63.

Frustrated by the pushback she continued to receive for communicating with Alloway residents, Nazarene posted online the next day with a clear disclaimer: "Hi I am asking for myself AND ONLY FOR MYSELF - how do you feel about being silenced? Unable to freely speak and ask questions because of volunteering." Compl. ¶ 64.

The next day, she asked again about taxes, again including an express disclaimer: "As a resident of Alloway, I am wondering what other residents think about a 9-15% school tax increase ? 'The above statements are made in my capacity as a private citizen, and not in my capacity as a board member. These statements are also not representative of the Board or its individual members and solely represent my own personal opinions.'" Compl. ¶ 65.

Shortly afterward, fellow Alloway Township Board of Education member Sara Cobb filed a complaint with the School Ethics Commission, claiming Nazarene violated School Ethics Act subsections 12-24.1(c), (d), (e), and (g) by asking constituents online for their feedback. Compl. ¶ 67, Ex. C. Nazarene responded that the First Amendment protects her

speech and communications with constituents. Compl. ¶ 68, Ex. D. Cobb's complaint remains pending before the commission. Compl. ¶ 69.

### D. Nazarene has stopped speaking publicly or engaging with her constituents because of the state's interpretation and enforcement of the School Ethics Act.

Given the state's interpretation of the Ethics Act, the warnings and admonishments she has received, and the complaint filed against her for speaking online with constituents, Nazarene stopped engaging in public comment and outreach. Compl. ¶ 70. She has a well-founded fear that anything she says online will expose her to sanctions. Compl. ¶ 70. But for the state's interpretation and enforcement threats, Nazarene would have posted online and solicited input on several matters of public concern regarding schooling in Alloway Township. Compl. ¶ 72.

For example, Alloway Township is considering a proposal for regionalization, a process in which Alloway would merge with two neighboring school districts and cede control to a centralized regional school board, thus eliminating the Alloway Township School District and Board of Education. Compl. ¶ 73. Eliminating local governance of schooling in Alloway is an issue of public concern. Compl. ¶ 73.

Nazarene worries that regionalization will dilute Alloway residents' voice in school governing decisions and deprive residents of the small, local school district that attracted many to the area. Compl. ¶ 74. She would like to post about her concerns and hear others' views on the topic. Compl. ¶ 75. But because of the enforcement threat she faces under the School Ethics Act, Nazarene has not made any posts, delivered any public comments, or asked questions to voters about regionalization. Compl. ¶ 76.

As another example, the Alloway Township School District recently adopted a budget that Nazarene believed was inflated and excessive. Compl. ¶ 77. She would like to post about why she voted against the 2024–2025 school budget, specifically highlighting that the budget allotted an unjustified amount of money for maintenance and upkeep of a single-building school with no planned infrastructure improvements. Compl. ¶ 78. But because of the state's interpretation and threatened enforcement of the School Ethics Act, Nazarene has not made any posts, delivered any public comments, or asked questions to voters about the budget. Compl. ¶ 79. Under the state's interpretation, Nazarene is

prevented from even informing Alloway residents how she voted on the budget proposal. Compl. ¶ 79.

## ARGUMENT

Absent a preliminary injunction, the School Ethics Act will continue to prevent elected officials from discussing matters of public concern in ways the First Amendment protects. And if the state's interpretation continues, so does the violation of Nazarene's rights, forcing her to either continue self-censoring or risk state sanctions for communicating with constituents online to represent them on the Alloway Township Board of Education. Nazarene has pre-enforcement standing to challenge the Act and seek a preliminary injunction because she intends to engage in constitutionally protected speech, which the Act proscribes, and she faces a credible threat of future enforcement.

Nazarene is entitled to a preliminary injunction against the state enforcing its interpretation of the Act because she satisfies all four preliminary injunction factors: She "is likely to succeed on the merits of her claim" that the Act violates the First Amendment, she is "suffering irreparable harm in the absence of preliminary relief," "the balance of equities tips in h[er] favor," and the "public interest" favors an injunction.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Nazarene is likely to succeed on the merits because the School Ethics Act unconstitutionally restricts her speech. Nazarene's intended speech—soliciting opinions and otherwise speaking about public matters that concern board business—enjoys full First Amendment protection. The Act's content-based speech restriction is presumptively unconstitutional and fails strict scrutiny. The Act is not narrowly tailored because the state lacks a compelling government interest in regulating elected officials' speech on matters of public concern. The state's interpretation of the Act is overinclusive because it considers any statements by board members about school issues as made in their official capacity. And the state's interpretation is not the least restrictive means available.

This Court should therefore preliminarily enjoin the state from enforcing the Act as it applies to elected officials' speech on matters of public concern so Nazarene can resume communicating and fulfill her duties as an elected representative.

## I.    Nazarene has pre-enforcement standing.

Nazarene has standing to challenge the Act's constitutionality because she "suffered an injury in fact, that is traceable to the challenged conduct of the defendant[s] … that is likely to be redressed by a favorable judicial decision." *N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 855 (3d Cir. 2022) (footnote omitted) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Regarding injury in fact, Nazarene need not "expose [her]self to liability before bringing suit to challenge the basis for the threat." *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007)). Instead, she can bring a pre-enforcement challenge to the Act because she faces a credible threat of enforcement under the Supreme Court's three-factor test in *Susan B. Anthony List v. Driehaus* (*SBA List*). *See id.* at 855–56 (employing the test from 573 U.S. 149, 161–64 (2014)).

First, her desire to solicit her constituents' opinions on school policy and to discuss board matters of public concern manifests intent to "engage in 'conduct arguably affected with a constitutional interest.'" *Id.* at 856 (quoting *SBA List*, 573 U.S. at 161). And because that "intended future conduct concerns political speech, it is certainly 'affected with a

constitutional interest.'" *SBA List*, 573 U.S. at 162 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Second, Nazarene's intended communications are arguably proscribed by the School Ethics Act as interpreted and enforced by the state. *N.J. Bankers Ass'n*, 49 F.4th at 856. The commission and commissioner have grounded the state's restrictions on school board members speaking publicly primarily on subsection 12-24.1(e) of the code of ethics, N.J.S.A. § 18A:12-24.1(e), which requires school board members to "recognize that authority rests with the board of education and … [commit to] make no personal promises nor take any private action that may compromise the board." *See, e.g.*, *Treston I*, slip op. at 7 (finding violations of 24.1(e) and 24(b)); *Pinto I*, slip op at 5–7 (finding violation of 24.1(e)); *In re Skurbe*, slip op. at 9 (finding violations of 24.1(e) and 24.1(f)); *see also* 2022 Advisory Op. at 2–3 (explaining the School Ethics Act precludes school board members from communicating with constituents online without citing or relying on any of the Act's provisions).

The commission's advisory opinion and enforcement decisions confirm that the Act arguably proscribes Nazarene's intended speech

about issues such as school funding and regionalization. *See N.J. Bankers Ass'n*, 49 F.4th at 856 ("That the [defendant] issued a 2002 Opinion interpreting [the statute] as applying to trade associations of banks, and has consistently reiterated that position … confirms our conclusion that [plaintiff's] intended conduct is 'arguably proscribed.'" (quoting *SBA List*, 573 U.S. at 162)). "At least for purposes of Article III standing," the advisory opinion "appears broad enough to cover [Nazarene's] intention." *Id.*

Third, Nazarene faces a substantial threat of future enforcement under the Act. *Id.* "Most obviously, there is a history of past enforcement here." *SBA List*, 573 U.S. at 164. The commission and commissioner have enforced the Act against multiple elected school board members for the same conduct Nazarene seeks to engage in—communicating with the public about school issues. Compl. ¶¶ 31–47, 70–79; *see also Nat'l Shooting Sports Found. v. Att'y Gen. N.J.*, 80 F.4th 215, 220 (3d Cir. 2023) ("A strong sign of future enforcement is that a law has been enforced against the plaintiff, a closely related party, or others for similar conduct."). And those enforcement proceedings "are not a rare occurrence." *SBA List*, 573 U.S. at 164. Just last summer, the commission

recommended sanctions against two elected board members for speaking about public matters that concerned—or could concern—school issues. Compl. ¶¶ 42–46.

The state's history of enforcement makes clear that no speech is safe. If your speech lacks a disclaimer, the state will punish you. *In re Skurbe*, slip op. at 10. If your speech contains a disclaimer clarifying that you are speaking in your personal capacity but failing to expressly state that you do not speak for the entire school board, the state punishes you. *Treston I*, slip op. at 2, 7. And even if your speech both clarifies that you are speaking in your personal capacity *and* disclaims speaking on the board's behalf, the state might still punish you because, it believes, the "substance" of your speech can "render the disclaimer meaningless." *Melnyk v. Fiel*, No. C64-18, slip op. at 4 n.1 (Sch. Ethics Comm'n Mar. 26, 2019).

Similarly, if you talk about pending school issues, the state punishes you. *In re Skurbe*, slip op. at 10. Talk about issues that schools may someday face, the state punishes you. *Pinto I*, slip op. at 7. Criticize a hiring decision, the state punishes you. *Kwapniewski v. Curioni*, No. C70-17, slip op. at 4–8 (Sch. Ethics Comm'n Dec. 17, 2019). Disagree

with school administration in an "inappropriate" manner, same. *Bey v. Brown*, No. C25-11, slip op. at 7 (Sch. Ethics Comm'n Dec. 20, 2011). Write a letter complaining about your superintendent and copy state officials, punishment awaits. *In re Hollander*, No. C49-07, slip op. at 8 (Sch. Ethics Comm'n Feb. 24, 2009). And if you publish your opinion or comments online endorsing candidates running for the school board, well, the picture's clear enough—you will face punishment for speaking publicly. *Treston I*, slip op. at 2, 7.

For over a decade, the state has punished one school board member after another, giving them the narrowest latitude to speak and making it "difficult, if not impossible" for elected school board members to use social media to express their views on issues of school policy without violating the School Ethics Act. Act. 2022 Advisory Op. at 3. This consistent history of enforcement threatens Nazarene's First Amendment rights, which entitle her to "the widest latitude to express [her] views on issues of policy." *Bond*, 385 U.S. at 136.

The threat of future enforcement Nazarene faces is "'bolstered by the fact that authority to file a complaint' [i]s not limited to a government actor [and can] be used as a political tool." *Const. Party of Pa. v. Aichele*,

757 F.3d 347, 364 (3d Cir. 2014) (quoting *SBA List*, 573 U.S. at 164). Under the Act, "any person, including a member of the commission, may file a complaint alleging a violation of the provisions of [the Act] or the Code of Ethics." N.J.S.A. § 18A:12-29(a). "Because the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations, there is a real risk of complaints from, for example, political opponents." *SBA List*, 573 U.S. at 164. Given that one fellow board member has already filed a complaint about Nazarene's speech, she reasonably fears it will happen again. Compl. ¶ 67.

Because Nazarene faces a credible threat of enforcement, she has "demonstrated an injury in fact sufficient for Article III standing." *See SBA List*, 573 U.S. at 168. She also satisfies the two remaining standing elements. The credible threat of enforcement is traceable to the commission and commissioner's enforcement of the Act, consistent with the 2022 Advisory Opinion and the state's past enforcement. *N.J. Bankers Ass'n*, 49 F.4th at 856. This Court can redress that injury by declaring that the state's interpretation of the Act violates the First Amendment and enjoining the state from enforcing it against Nazarene.

*Id.* Nazarene, therefore, has pre-enforcement standing to challenge the state's interpretation and application of the School Ethics Act.

## II.    Nazarene is entitled to a preliminary injunction.

Nazarene is entitled to preliminary relief enjoining the state from enforcing the School Ethics Act against her because she "is likely to succeed on the merits of her" First Amendment claim, is "suffering irreparable harm," "the balance of equities" favors her, and the "public interest" favors an injunction. *Reilly*, 858 F.3d at 177 (quoting *Winter*, 555 U.S. at 20). The first two factors "are the most critical," and the last two "merge when the [g]overnment is the opposing party." *Nken v. Holder*, 556 U.S. 418, 434, 435 (2009). All favor Nazarene here.

That is especially so in that, while the moving party usually bears the burden of proving the first two factors, "[i]n First Amendment cases … the initial burden is flipped," and the government must "prov[e] that the law is constitutional." *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020). Because the state cannot make such a showing here, Nazarene "must be deemed likely to prevail." *Reilly*, 858 F.3d at 180.

## A.    Nazarene is likely to succeed on the merits.

Nazarene is likely to succeed on the merits because the School Ethics Act violates the First Amendment. The First Amendment fully protects Nazarene's speech. Under First Amendment scrutiny, the Act, as the state interprets and applies it, is content based because the state's proscriptions turn on what a school board member communicates—in effect, anything a board member says about school issues or board matters can or will incur punishment. The Act fails strict scrutiny because it does not serve a compelling interest, is not narrowly tailored, and is not the least restrictive means available. The state cannot meet its burden to prove otherwise, and the Court should therefore preliminarily enjoin the commissioner and commission members from enforcing the School Ethics Act to punish Nazarene for speaking about school issues.

### 1.    The First Amendment fully protects Nazarene's speech.

The First Amendment fully protects Nazarene's speech to her constituents on matters of public concern because she is an elected representative of a public board. The Supreme Court has recognized that elected representatives' speech and communication with constituents are

entitled to the highest levels of First Amendment protection. After all, "First Amendment protection is 'at its zenith'" when applied to "core political speech." *Meyer v. Grant*, 486 U.S. 414, 425, 420 (1988). That is because of our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Reflecting this commitment, the Supreme Court has stressed that "[t]he role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Wood v. Georgia*, 370 U.S. 375, 394–95 (1962). The First Amendment "surely promises an elected representative … the right to speak freely on questions of government policy." *Wilson*, 595 U.S. at 478.

Indeed, the "manifest function of the First Amendment in a representative government" is to give elected officials like Nazarene "the widest latitude to express views on issues of social policy." *Bond*, 385 U.S. at 135–36; *see also Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that

Amendment was to protect the free discussion of governmental affairs.");

*Buckley v. Valeo*, 424 U.S. 1, 14–15 (1976) ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation."). The First Amendment's wide latitude to freely discuss governmental affairs extends to elected representatives' communications with their constituents about public issues.

Elected representatives such as Nazarene speak for their constituents. They cannot fulfill their roles if they are precluded by threat of sanctions from communicating with constituents to find out what they think.

> **2. The School Ethics Act, as applied to Nazarene's intended speech, violates the First Amendment because it is content based and fails strict scrutiny.**

The School Ethics Act, as interpreted and applied by the state, is a content-based speech restriction that fails strict scrutiny. A speech restriction is content based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see also Camp Hill Borough Republican*

*Ass'n v. Borough of Camp Hill*, 101 F.4th 266, 269–71 (3d Cir. 2024) (applying *Reed* and *City of Austin v. Reagan Nat'l Advert. of Aus., LLC*, 596 U.S. 61 (2022)). The state's interpretation of the Act is content based because it regulates speech based on the topic discussed and a message's substance—the state deems that the Act applies to restrict any speech or communications "relating to the Board and/or [board members'] official duties and responsibilities." 2022 Advisory Op. at 3. Or, more simply, if school board members speak publicly about school issues that have (or may someday) come before the school board, the speech is subject to the state's restrictions.

Content-based speech restrictions are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. But at the very first step, the state lacks a compelling interest in restricting or punishing elected board members' speech as it has done. The commission's advisory opinion suggests one interest: ensuring school boards speak with one voice by guaranteeing board members' speech on matters that could concern board business "do[es]

not appear to be written on behalf of, or with the authorization of the Board." 2022 Advisory Op. at 2.

But the state cannot prove that interest addresses any actual issue of concern. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822 (2000) ("The question is whether an actual problem has been proved in this case."); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (The government "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.").

The advisory opinion, for example, provides no showing that a school board member's social media posts repeatedly stating he was "speaking on [his] own behalf and not for the board" would instead be regarded as the board's official pronouncements. 2022 Advisory Op. at 1. Instead, the commission offers only its surmise that because people "are aware of [board members'] status," they "would likely attribute any statement from you as being from you in your capacity as a Board member, and/or on behalf of the Board." *Id.* at 3. Such assumptions and assertions fail to constitute proof sufficient to justify government restrictions of speech. *See Camp Hill*, 101 F.4th at 271 (citing *Fisher v.*

*Univ. of Tex. at Aus.*, 570 U.S. 297, 311–12 (2013), for the proposition that mere assertions do "not prove that the ordinance combated the[ stated] concerns effectively").

Nor do the commission's enforcement decisions as a whole point to any evidence that any member of the public ever actually mistook any board member's personal statements online as official board statements. And the state certainly cites no evidence of the public clamoring for fewer communications from elected school board members about issues of public concern.

Even if the state could prove *any* issue exists, it still would not satisfy its burden. The state must show the issue it is addressing presents a *compelling* state interest. Here, in the context of elected members' speech, the government's stated interest is not compelling. That is "because elected officials to a political body represent different constituents," and in this context there is "far less concern that they speak with one voice." *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 178 (3d Cir. 2015). "In fact, debate and diversity of opinion among elected officials are often touted as positives in the public sphere." *Id.* (citing *Bond*, 385 U.S. at 136–37).

The School Ethics Act, as the state interprets and enforces it, also fails strict scrutiny because it flunks narrow tailoring. The state "bears the burden of proving that the restrictions were tailored both to serve those interests and to curtail speech as little as possible." *Camp Hill*, 101 F.4th at 271; *Reilly*, 858 F.3d at 180. But the state cannot show it is curtailing speech as little as possible. It is, instead, curtailing speech broadly—regulating elected board members' speech whenever it relates to school issues, even if the board member clarifies she is speaking in a personal capacity. For example, the state punished Treston's speech even when he disclaimed board affiliation. *Treston II*, slip op. at 3. And it punished Cusato's speech even when it did not concern a current board matter. *Pinto I*, slip op. at 1.

For Nazarene, simply asking her constituents for their thoughts on taxes resulted in a complaint being filed against her. Compl. ¶ 67, Ex. C. And the Alloway school board president and chief school administrator admonished her that asking questions and including disclaimers will not avoid sanctions under the School Ethics Act. Compl. ¶¶ 62–63.

The state's interpretation of the School Ethics Act is "seriously overinclusive" because it considers any statement by board members

such as Nazarene about any issues the board is considering (or may one day consider) as made in their official capacity, solely due to their status as board members. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 805 (2011); *see* 2022 Advisory Op. at 3. Yet the state cannot label conduct official just because it originates with a single board member and/or concerns board business.

The Supreme Court's decision last year in *Lindke v. Freed*, 601 U.S. 187 (2024), makes this clear. There, a Port Huron resident sued the city manager for deleting the resident's comments and later blocking him from the manager's personal Facebook page. *Id.* at 191–93. In assessing whether the city manager's social media use could be deemed state action sufficient to support a section 1983 claim, the Court emphasized "[t]he distinction between private conduct and state action turns on substance, not labels: Private parties can act with the authority of the State, and state officials have private lives and their own constitutional rights." *Id.* at 197.

The Court held that "a public official's social media activity constitutes state action under § 1983 only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to

exercise that authority when he spoke on social media." *Id.* at 198. The Court also observed that a social media account bearing "a label (*e.g.*, 'this is the personal page of James R. Freed') or a disclaimer (*e.g.*, 'the views expressed are strictly my own') … would be entitled to a heavy (though not irrebuttable) presumption that all of the posts on [the] page are personal." *Id.* at 202.

The Court's analysis in *Lindke* provides a readily apparent less restrictive alternative to the state's speech-restrictive application of the School Ethics Act. First, no evidence suggests the Alloway school board granted Nazarene or any other individual board member actual authority to speak on the board's behalf, and Nazarene's posts do not purport to speak on the board's behalf. *See id.* at 203 ("[A]n official does not necessarily purport to exercise h[er] authority simply by posting about a matter within it."). Her speech that prompted the complaint provides an example. In those posts, Nazarene asked what residents think about possible tax increases for school funding. Compl. ¶ 67, Ex. A. Of course, she lacks actual authority to set or increase taxes on her own, and nothing in her social media posts suggests otherwise. And her posts never purport to speak on the board's behalf. *See Lindke*, 601 U.S. at 201–04.

Labeling her Facebook account as personal and including express disclaimers that she was not speaking for the board bolster the conclusion that Nazarene never purported to speak on the board's behalf, creating a heavy presumption that she speaks only in her personal capacity. *Compare id.* at 202 (giving "the views expressed are strictly my own" as an example disclaimer)*, with Treston II*, slip op. at 3 (finding deficient Treston's disclaimer that "[t]he author is writing this endorsement on his own personal behalf [and] [h]is opinions are his own").

It would also be far less restrictive if the state were to interpret and apply the School Ethics Act in a common-sense rather than a pejorative way. If a board member posts to constituents online saying she is speaking in her personal capacity and not on behalf of the board, that should be sufficient. Punishing any board member's use of the word "we," any mention that she serves on a school board, or any reference to board matters or school issues is far too punitive and excessive to serve any legitimate interest the state may claim to have.

Or, for that matter, if the state believes there is a possibility that a local school board member's personal comments and outreach may be misinterpreted as official board positions, another simple answer is that

the board can speak for itself. As has long been recognized in First Amendment jurisprudence, "the remedy to be applied is more speech, not enforced silence." *Linmark Assocs., Inc. v. Willingboro Twp.*, 431 U.S. 85, 97 (1977) (quoting *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)); *see also Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*, 512 U.S. 136, 146 (1994) ("[W]e cannot allow rote invocation of the words 'potentially misleading' to supplant the Board's burden to 'demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" (quoting *Edenfield v. Fane*, 507 U.S. 761, 771 (1993)).

Thus, the Act, as interpreted by the state, cannot be the least restrictive way to ensure members do not speak improperly on the Board's behalf. Because the School Ethics Act is a content-based speech restriction that fails strict scrutiny, Nazarene is likely to succeed on the merits of her First Amendment challenge to the state's interpretation.

### B.    The three other factors favor a preliminary injunction.

The remaining factors favor Nazarene because she "is likely suffering irreparable harm," "the balance of equities" favor her, and the "public interest" favors an injunction. *Reilly*, 858 F.3d at 177 (quoting

*Winter* 555 U.S. at 20). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Smith v. City of Atl. City*, 138 F.4th 759, 779 (3d. Cir. 2025) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)). Here, Nazarene's right to speak without state sanction and her constituents' rights to receive and hear her speech are being infringed every day. In contrast, the state "suffers no legitimate harm from not enforcing an unconstitutional policy," and "strong public interest" favors upholding the requirements of the First Amendment. *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022).

## III.    The Court should waive the bond requirement.

While Rule 65(c) instructs courts to require security in granting preliminary injunctions, the Third Circuit instructs district courts to waive the bond requirement when "[t]he equities of potential hardships to the parties" favor doing so. *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991). The district court should also waive the bond requirement "to prevent undue restriction" "of suits to enforce important federal rights," like the First Amendment. *Id*. Any financial hardship on Nazarene's enforcement of her First Amendment rights outweighs the

state's potential hardship because the state "suffers no legitimate harm from not enforcing an unconstitutional policy." *Amalgamated Transit*, 39 F.4th at 109. The Court should therefore forego requiring a bond here.

## CONCLUSION

Nazarene wants to be able to communicate freely with Alloway residents about school matters because the issues are important and that's what conscientious elected representatives do—they seek input from constituents. "The First Amendment surely promises an elected representative like [Nazarene] the right to speak freely on questions of government policy." *Wilson*, 595 U.S. at 478. And it surely forbids the Commissioner of Education and the School Ethics Commission from infringing Nazarene's right to speak freely with the public on questions of school policy.

Because the commissioner and commission's interpretation of the School Ethics Act violates her First Amendment rights, Nazarene respectfully requests that this Court grant her motion for a preliminary injunction prohibiting the state from enforcing the Act against her speech on matters of public concern pending a final judgment.

Dated: November 20, 2025

Respectfully submitted,

/s/ *Greg Harold Greubel*

Greg Harold Greubel
  (NJ Bar No. 171622015)
James C. Grant*
  (WA Bar No. 14358)
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
greg.greubel@thefire.org
jim.grant@thefire.org

/s/ *Daniel A. Zahn*

Daniel A. Zahn*
  (DC Bar No. 90027403)
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
daniel.zahn@thefire.org


*Pro hac vice motions pending

*Counsel for Plaintiff*