UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAIL NAZARENE<br><br>    Plaintiff,<br><br>    v.<br><br>KEVIN DEHMER, as New Jersey Department of Education Commissioner; ROBERT W. BENDER, as New Jersey School Ethics Commission Chairperson; MICHAL CARUCCI, MARK J. FINKELSTEIN, DENNIS ROBERTS, CAROL E. SABO, and RICHARD TOMKO, as New Jersey School Ethics Commission members,<br><br>    Defendants. | Hon. Christine P. O'Hearn, U.S.D.J.<br>Hon. Matthew J. Skahill, U.S.M.J.<br><br><br>Civil Action No.: 1:25-cv-17770 |

---

## BRIEF OF DEFENDANTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex, P.O. Box 080
Trenton, New Jersey 08625
(609) 376-3100
Attorney for Defendants

Benjamin M. Shultz
Assistant Attorney General

Vijayasri G. Aryama
Luke D. Hertzel-Lagonikos
Naima Drecker-Waxman
Deputy Attorneys General

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................3

    A.The School Ethics Act ...................................................................3

    B. This Lawsuit ................................................................................6

STANDARD OF REVIEW .........................................................................8

ARGUMENT ...........................................................................................10

    A. Nazarene Is Unlikely To Succeed On The Merits ....................10

    B. Nazarene Is Unlikely To Suffer Any Irreparable Harm That A
        Preliminary Injunction Could Address ....................................29

    C. The Remaining Equitable Factors Likewise Favor
        Denying The Preliminary Injunction Motion ..........................32

CONCLUSION ........................................................................................34

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Allegheny Energy, Inc. v. DQE, Inc.*,
    171 F.3d 153 (3d. Cir. 1999)...............................................................................8

*Bond v. Floyd*,
    385 U.S. 116 (1966)..............................................................................23, 26, 27

*Clapper v. Amnesty Intl.*,
    568 U.S. 398  (2013)..........................................................................................9

*Davis v. FEC*,
    554 U.S. 724 (2008)........................................................................................18

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
    108 F.4th 194 (3d. Cir. 2024) ........................................................9, 10, 32, 33

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)..........................................................................22, 23, 24

*Goode v. Camden City Sch. Dist.*,
    2017 WL 2265146 (D.N.J. May 24, 2007)....................................................24

*Greater Phila. Chamber of Com. v. City of Phila.*,
    949 F.3d 116  (3d. Cir. 2020).............................................................................9

*Greenberg v. Lehocky*,
    81 F.4th 376 (3d Cir. 2023) .....................................................................20, 21

*Houston Cmty. Coll. Sys. v. Wilson*,
    595 U.S. 468 (2022).......................................................................................23

*In re Subpoena 2018R00776*,
    947 F.3d 148 (3d Cir. 2020)......................................................................24, 26

*Jerrytone v. Musto*,
    167 F. App'x 295 (3rd Cir. 2006).................................................................24

*Kos Pharms., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d. Cir. 2004) ............................................................................... 8

*Lewis v. Gov't Emp.'s Ins. Co.*,
    98 F.4th 452 (3d Cir. 2024) ............................................................................... 18

*Lindke v. Freed*,
    601 U.S. 187 (2024) ........................................................................................... 28

*Mallet & Co. Inc. v. Lacayo*,
    16 F.4th 364 (3d Cir. 2021) ............................................................................... 31

*Maryland v. King*,
    567 U.S. 1301 (2012) ................................................................................... 10, 33

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024) ........................................................................................... 21

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ............................................................................................. 19

*Nat'l Shooting Sports Found. v. Platkin*,
    80 F.4th 215 (3d Cir. 2023) ............................................................................... 19

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................................... 9, 32

*Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*,
    49 F.4th 866 (3d Cir. 2022) ............................................................................... 18

*Pharmacia Corp. v. Alcon Labs., Inc.*,
    201 F. Supp. 2d 335 (D.N.J. 2002) ................................................................... 32

*Phila. City Council v. Schweiker*,
    40 F. App'x 672 (3d Cir. 2002) ........................................................................ 25

*Pub. Int. Legal Found. (PILF) v. Sec'y of the Commonwealth of Pa.*,
    136 F.4th 456  (3d Cir. 2025) ............................................................................ 18

iv

*Reading v. North Hanover Twp.*,
    124 F.4th 189 (3d Cir. 2024) .......................................................................19

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017).................................................................9, 32

*Spokeo v. Robins*,
    578 U.S. 330 (2016)...................................................................................18

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024)...................................................................................29

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)..............................................................................19, 21

*United States v. Marcavage*,
    609 F.3d 264 (3d Cir. 2010)......................................................................21

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)...................................................................................27

*Veterans Guardian VA Claim Consulting LLC v. Platkin*,
    133 F.4th 213 (3d Cir. 2025) .......................................................................9

*Werkheiser v. Pocono Twp.*,
    780 F.3d 172 (3d Cir. 2015).................................................................24, 25

*Werkheiser v. Pocono Twp.*,
    210 F. Supp. 3d 633 (M.D. Pa. 2016)........................................................24

*Williams-Yulee v. Florida Bar*,
    575 U.S. 433 (2015)...................................................................................26

*Wood v. Georgia*,
    370 U.S. 375 (1962)..............................................................................23, 27

## FEDERAL STATUTES

42 U.S.C. § 1983 ................................................................................28

## STATE STATUTES

N.J. Stat. Ann. § 18A:6-9.1 ...............................................................5

N.J. Stat. Ann. § 18A:12-22 ..........................................................3, 24

N.J. Stat. Ann. § 18A:12-22(a) ..........................................................3

N.J. Stat. Ann. § 18A:12-24(b) ..........................................................3

N.J. Stat. Ann. § 18A:12-24(e) ..........................................................3

N.J. Stat. Ann. § 18A:12-24.1 ...........................................................3

N.J. Stat. Ann. § 18A:12-24.1(a) .......................................................3

N.J. Stat. Ann. § 18A:12-24.1(b) .......................................................3

N.J. Stat. Ann. § 18A:12-24.1(e) ...............................................*passim*

N.J. Stat. Ann. § 18A:12-27(a)-(b) .....................................................3

N.J. Stat. Ann. § 18A:12-28(b) ..........................................................5

N.J. Stat. Ann. § 18A:12-29(a) ..........................................................4

N.J. Stat. Ann. § 18A:12-29(b) ..........................................................4

N.J. Stat. Ann. § 18A:12-29(c) ..........................................................4

N.J. Stat. Ann. § 18A:12-29(d) ..........................................................5

N.J. Stat. Ann. § 18A:12-29.1 ...........................................................5

N.J. Stat. Ann. § 18A:12-31 ..............................................................5

N.J. Stat. Ann. § 18A:12-32........................................................5, 6, 8, 30

## OTHER AUTHORITIES

*Aziz v. Nikitinsky, et al., Monroe Twp. Bd. of Educ., Middlesex Cnty.*,
    No. C56-22 (Sch. Ethics Comm'n Oct. 17, 2022)....................................11, 12

*Bentzley v. Giordano*,
    No. C30-24 (Sch. Ethics Comm'n Jan 28, 2025...............................................13

*Hyett v. Bellomo*,
    No. C96-24 (Sch. Ethics Comm'n Sep. 23, 2025)...........................................12

*In re Skurbe*,
    Nos. C75-21 and C37-22 (Sch. Ethics Comm'n July 22, 2025) ....................17

*In re Malespina*,
    No. C22-22 (Sch. Ethics Comm'n June 17, 2024) ...................................17, 28

*In re Treston*,
    No. C71-18 (Sch. Ethics Comm'n Apr. 17, 2021) .............................12, 16, 17

*In re Treston*,
    No. 208-21 SEC (Comm'r of Educ. Sept. 30, 2021)..........................16, 17, 25

*McCooley v. Johnson*,
    No. C63-24 (Sch. Ethics Comm'n Feb. 22, 2025)....................................13, 15

*Pinto v. Cusato*,
    No. C74-23 (Sch. Ethics Comm'n July 22, 2025)...........................................15

*Pinto v. Cusato*,
    No. 445-25 SEC (Comm'r of Educ. Sep. 12, 2025)........................................16

*Rose v. Francis*,
    No. C35-20 (Sch. Ethics Comm'n June 22, 2022) .........................................27

*Schwartz v. Abedrabbo*,
    No. C40-21 (Sch. Ethics Comm'n Jan. 25, 2022) ..........................................27

*Strehle v. Baird*,
  No. C91-23 (Sch. Ethics Comm'n July 23, 2024) ...........................................27

*Thor v. Patruno*,
  No. C34-23 (Sch. Ethics Comm'n Nov. 28, 2023) .........................................13

*Van Allen v. Alfano*,
  No. C88-23 (Sch. Ethics Comm'n June 17, 2024) ............................11, 12, 13

## REGULATIONS

N.J. Admin. Code § 6A:4-1.3(c)(2) ...........................................................5

N.J. Admin. Code § 6A:4-1.3(c)(3) ...........................................................5

N.J. Admin. Code § 6A:28-1.5 ...............................................5, 6, 30, 31

N.J. Admin. Code. § 6A:28-5.1 to 5.2 ......................................................5

N.J. Admin. Code § 6A:28-9.7 ................................................................4

**INTRODUCTION**

This lawsuit is based on a fundamental misunderstanding about the scope of the School Ethics Act, and about the kinds of behavior that defendants enforce the Act to prohibit. Plaintiff Gail Nazarene, a member of the Alloway Township Board of Education, wants to use social media in her personal capacity to discuss matters relating to local schools. As indicated in her complaint and motion for preliminary injunction, she plans to accomplish this by making postings from a personal social media account, and in the past, she has been willing to use a clear disclaimer indicating that she is speaking only for herself, and not for the broader Board. But defendants do not regulate the type of conduct Nazarene describes. As Nazarene admits, nothing in the School Ethics Act itself contains such restrictions. And while Nazarene points to various advisory and other opinions issued by defendants to claim that they sanction such speech, she has misread and misunderstood the opinions she relies on—a point reinforced by other opinions Nazarene fails to address.

Once the Court accounts for how defendants *actually* interpret and apply the School Ethics Act, it should deny Nazarene's request for a preliminary injunction. First, Nazarene has no likelihood of success on the merits. She lacks Article III standing because there is no substantial chance that defendants will regulate her desired conduct, so she has suffered no injury in fact that this lawsuit could redress. And even if Nazarene could establish standing, her First Amendment claim would

1

fail on the merits because defendants' regulatory actions—properly understood—do not restrict the kinds of private-capacity speech Nazarene says she wants to engage in, and thus cannot violate the Constitution. Moreover, when board members clearly speak in their individual capacities, defendants do not consider such speech to trigger the ethics concerns associated with school-related speech on behalf of the board—and so the restrictions that defendants *do* actually impose on board members are narrowly tailored to serve important State interests.

That should suffice to resolve this motion. But in any event, Nazarene is also not suffering any irreparable harm that a preliminary injunction could rectify. By operation of State law, Nazarene's mere act of filing this lawsuit has served to bar defendants from taking action on any complaints filed against Nazarene related to the subject matter of this case. Indeed, shortly after this suit was filed, defendants formally put the sole pending complaint against Nazarene (filed by a third party) into abeyance. And since acting on complaints is the only way defendants enforce the School Ethics Act in the kinds of matters at issue in this case, there is no need for injunctive relief against defendants at this preliminary stage.  Instead, Nazarene can await final judgment without worrying about any of the consequences that a preliminary injunction could prevent.

# BACKGROUND

## A.    The School Ethics Act

New Jersey's School Ethics Act (Act), N.J. Stat. Ann. § 18A:12-22 *et seq.*, seeks to ensure that "the conduct of members of local boards of education and local school administrators hold the respect and confidence of the people." N.J. Stat. Ann. § 18A:12-22(a). Among other things, the Act bars such officials from engaging in various activities that can create a conflict of interest, such as using one's official position to secure "unwarranted privileges, advantages or employment" for himself or his immediate family, or accepting items of value "for the purpose of influencing him … in the discharge of his official duties." *Id.* § 18A:12-24(b), (e). In addition, the Act requires school board members to abide by a Code of Ethics with ten listed provisions. *See id.* § 18A:12-24.1. Those provisions include pledges to "make decisions in terms of the educational welfare of children"; to "recognize that authority rests with the board of education" as an entity and to not take "any private action that may compromise the board"; and to uphold "all laws, rules and regulations of the State Board of Education[.]" *Id.* § 18A:12-24.1(a), (b), (e).

The Act also creates a nine-member School Ethics Commission (Commission), within the State's Department of Education, which enforces the Act by adjudicating complaints. *Id.* § 18A:12-27(a)-(b). That process begins when "[a]ny person, including a member of the [C]omission," files a complaint with the

Commission alleging a violation of the Act (including the Code of Ethics). *Id.* § 18A:12-29(a). The Commission then serves a copy on each school official named in the complaint and provides them an opportunity to respond. *Id.* § 18A:12-29(b). Thereafter, the Commission decides whether probable cause exists to "credit the allegations in the complaint," accounting for the requirement that if the complaint alleges a violation of the Code of Ethics, the burden of proof rests with the accusing party. *Id.*; *see also* N.J. Admin. Code § 6A:28-9.7.

If the Commission decides that probable cause does not exist, the complaint is dismissed as the agency's final agency action. N.J. Stat. Ann. § 18A:12-29(b). If the Commission finds probable cause does exist, and there are factual issues in dispute, it refers the matter to the Office of Administrative Law for a hearing.[1] *Id.* Once that hearing is completed, the Commission decides if the relevant conduct constitutes a violation of the Act (including the Code), and it provides written findings of fact and conclusions of law. *Id.* § 18A:12-29(c). If a violation is found, the Commission also recommends a penalty of reprimand, censure, suspension, or removal to the Commissioner of Education, who thereafter imposes a sanction. *Id.* Individuals unhappy with a Commission decision may appeal directly to the Commissioner of Education, whose ultimate decision constitutes final agency action

---

[1] If there are no factual issues, the Commission may retain the matter for decision on a summary basis.

reviewable in the Appellate Division of the Superior Court. *Id.* §§ 18A:6-9.1, 18A:12-29(d), 18A:12-29.1; N.J. Admin. Code § 6A:4-1.3(c)(2), (3).

Importantly, if the subject matter of the complaint is also the subject of any "matter actually pending in any court" or New Jersey "administrative agency," State law bars the Commission from processing the complaint or issuing any "final ruling" on it. N.J. Stat. Ann. § 18A:12-32; *see also* N.J. Admin. Code § 6A:28-1.5.

Apart from its complaint adjudication role, the Commission also has the power to provide guidance about the Act by issuing "advisory opinions," N.J. Stat. Ann. § 18A:12-28(b). By statute, any school official can "request and obtain from the [C]ommission an advisory opinion as to whether any proposed activity or conduct would" violate the Act. N.J. Stat. Ann. § 18A:12-31; *see also* N.J. Admin. Code. § 6A:28-5.1 to 5.2. By default, these opinions are not made public, but they can be made public if at least six commissioners vote to do so, N.J. Stat. Ann. § 18A:12-31, and the Commission has elected to publish many of these opinions on its website, *see* https://www.nj.gov/education/legal/ethics/advisory/ (last visited Jan. 5, 2026). Further, advisory opinions are intended to provide guidance on fact specific scenarios and they are not final agency decisions. *See* N.J. Stat. Ann. § 18A:12-29.1 and -31. The Commission also cannot issue an advisory opinion if the underlying issue relates to an existing matter pending before another court or

administrative agency of the State.  N.J. Stat. Ann. § 18A:12-32; N.J. Admin. Code § 6A:28-1.5.

### B.    This Lawsuit

Plaintiff Gail Nazarene is a member of the Alloway Township Board of Education (Board).  *See* Compl., ECF No. 1 ¶ 9.[2] During her campaign for office, Nazarene had posted on Facebook using a personal Facebook page called "Gail Nazarene for Alloway School Board." *Id.* ¶54. After her election, and assumption of office in February 2025, Nazarene "continued to use her personal Facebook page" to communicate with community members, retitling the page to "Gail Nazarene for Alloway." *Id.* ¶ 60. Nazarene says that these activities led to criticism from both a fellow board member and an Alloway school administrator, who may have been concerned that she was violating the Code of Ethics.  *Id.* ¶¶ 58, 61-63. In response, Nazarene started giving her posts clear disclaimers, such as an April 3, 2025 post in which she indicated she was "asking for myself AND ONLY FOR MYSELF," and an April 4, 2025 post in which she said she was making statements "in my capacity

---

[2]  Except as otherwise noted in this opposition, for the purposes of the motion for preliminary injunction, defendants are willing to assume the truth of the verified facts alleged in the Complaint. *See* ECF No. 1 at 30 (verifying the allegations in paragraphs 9-10, and 52-79). Defendants reserve the right to dispute any fact through discovery. Defendants also do not assume the veracity of any legal conclusions contained within the verified paragraphs.

as a private citizen, and not in my capacity as a board member," and further added that her statements were "not representative of the Board." *Id.* ¶¶ 64-65.

Despite the disclaimers on these early April 2025 posts, a fellow member of Alloway's school board filed a complaint that same month with the Commission, alleging that these posts (and an earlier March one without a clear disclaimer) violated the Code of Ethics. *See id.* ¶ 67, ECF No. 1, Exh. C. Nazarene filed a written response, *see* ECF No. 1, Exh. D, and the complaint remains pending with the Commission, ECF No. 1 ¶ 69.

On November 20, 2025—more than seven months after her fellow board member filed the complaint against her—Nazarene filed in this Court a complaint and contemporaneous motion for preliminary injunction. (ECF Nos. 1 to 1-5 and 4 to 4-2). The listed defendants were the Commissioner of Education and the current members of the Commission. ECF No. 1 ¶¶ 11-13.

Nazarene's complaint sought declaratory and injunctive relief for an asserted First Amendment violation, *id.* at ¶¶ 88-99, and she claims that in light of the April 2025 complaint against her (filed by an Alloway School Board Member), and the warnings she had previously received (from an Alloway School Board Member and Alloway School Administrator), she has been too afraid to post online about matters related to Alloway schools. *See id.* at ¶¶ 70-79. Nazarene attributes her subjective fear to what she calls "the state's interpretation of the Ethics Act," *id.* ¶ 70, and she

maintains that the State interprets the Act to "prohibit essentially all communications by board members about school board matters" and related topics. *Id.* ¶ 48.

On November 26, 2025, at Nazarene's request, the parties agreed that until the preliminary injunction motion is decided, "Defendants will take no action (other than to move a matter in abeyance pursuant to N.J. Stat. Ann. § 18A:12-32, on any matters initiated under the School Ethics Act) and will impose no sanctions against Gail Nazarene for speech about matters of public concern on any social media or internet platform." *See* ECF No. 20. On December 16, 2025, the Commission placed the April 2025 complaint against Nazarene into abeyance.

Defendants now oppose the preliminary injunction motion.

## STANDARD OF REVIEW

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d. Cir. 2004) (internal citations and quotations omitted). To obtain such relief, a plaintiff must show: 1) a likelihood of success on the merits, 2) that she will suffer irreparable harm without the preliminary injunction, 3) that granting the preliminary injunction will not result in greater harm to the nonmovant, and 4) that the public interest favors the relief. *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d. Cir. 1999). Plaintiffs must establish the first two factors, known as

"gateway factors," before a court may consider the last two. *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d. Cir. 2020).

In First Amendment cases, the likelihood of success prong accounts for the fact that on some underlying First Amendment merits issues the government bears the burden of proof, and the test recognizes that the State's burden at the preliminary injunction stage tracks its burden at the trial stage. *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017). But the plaintiff still bears the burden of showing that the challenged law actually "restricts protected speech." *Id.* at 180 n.5. Moreover, since the plaintiff is the party invoking federal jurisdiction, she also bears the burden of demonstrating Article III standing. *See, e.g.*, *Clapper v. Amnesty Intl.*, 568 U.S. 398, 411-12 (2013). And as in non-First Amendment cases, the plaintiff retains the burden of demonstrating that it is more likely than not that she will suffer irreparable harm without a preliminary injunction. *See, e.g.*, *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 218-19 (3d Cir. 2025).

If the movant satisfies the first two preliminary injunction factors, the Court should balance all four factors to decide whether to grant preliminary relief. *Reilly*, 858 F.3d at 176. Factors three and four—harm to the opposing party and the public interest—"merge when the Government is the opposing party," *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d. Cir. 2024) (*DSSA*) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)), since

9

any "time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Id.* at 206 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). A plaintiff's delay seeking a preliminary injunction also weighs against granting her motion. *Id.* (explaining how the last two factors weighed against plaintiffs because, in part, their four-month delay suggested they felt little need to move quickly).

## **ARGUMENT**

Nazarene has failed to establish that any of the four preliminary factors weighs in her favor, let alone all of them taken together.

### A.    **Nazarene Is Unlikely To Succeed On The Merits.**

To demonstrate a likelihood of success, Nazarene must show that she likely has Article III standing, and that defendants will likely violate her First Amendment rights. But because Nazarene misunderstands the kinds of speech that defendants regulate, she cannot establish either of these two necessary elements.

1. Fundamental to all of Nazarene's arguments is her belief that defendants interpret the School Ethics Act to "prohibit[] essentially all communications by board members about school board matters" and related topics, especially on social media. ECF No. 1 ¶¶ 2, 48. But Nazarene is mistaken. She is entirely free to speak on these matters in her personal capacity, so long as she follows certain guardrails.

And for the most part, that just means Nazarene must avoid creating a perception among the public that she is speaking on behalf of the Board.

As an initial matter, Nazarene's own complaint concedes that neither the Act nor the Code of Ethics have provisions that directly restrict school board members' communications with constituents about school related issues. *See* ECF No. 1 ¶ 17. To the extent Nazarene has any concerns at all, they instead appear to relate to how she believes that the Commission has interpreted various parts of the Code of Ethics, particularly the portions requiring that Board members "recognize that authority rests with the board of education" as an entity, and that they not take "any private action that may compromise the board." N.J. Stat. Ann. § 18A:12-24.1(e).

Commission opinions interpreting that provision, however, have recognized that ethics concerns with public statements (such as those on social media) will arise only if "a reasonable member of the public could perceive that the [board member] is speaking in his or her official capacity or pursuant to his or her official duties." *See, e.g.*, *Van Allen v. Alfano*, No. C88-23, at 8 (Sch. Ethics Comm'n June 17, 2024) (quoting *Aziz v. Nikitinsky, et al., Monroe Twp. Bd. of Educ., Middlesex Cnty.*, No. C56-22, at 8 (Sch. Ethics Comm'n Oct. 17, 2022)). If the speech is unrelated to the board's business or operations, the board member could not possibly be perceived as speaking in an official capacity, and there is no concern at all. *Id*. And even if the speech is related to the board's business or operations, the Commission still

11

considers whether there is sufficient nexus between the post and the board member's board position, such that the board member could be perceived as speaking in an official capacity. *Id*. at 9.  If the Commission concludes that there is a sufficient nexus between a social media post and the speaker's membership on a board, it then goes on to consider whether a complainant established the elements of an alleged violation of the ethics code. *See, e.g., id.* at 13.  In this regard, the Commission's opinions recognize that a disclaimer will generally be an effective way of clarifying that the board member is speaking in their personal capacity—although a disclaimer is not "dispositive" because the Commission allows for unusual situations where the surrounding facts and circumstances render the disclaimer ineffective. *See, e.g.*, *id.* at 8 (quoting *Aziz*, No. C56-22, at 8); *see also In re Treston*, No. C71-18, at 9 (Sch. Ethics Comm'n Apr. 17, 2021) ("*Treston I*") (explaining this contextual approach ensures that disclaimers are not a mere formality that board members treat as a "carte blanche to then discuss Board business and/or matters in a way that is, or appears to be, on behalf of the Board"); *Hyett v. Bellomo*, No. C96-24, at 5 (Sch. Ethics Comm'n Sep. 23, 2025) (board member's Facebook post sharing "an email she received as a Board member and commenting on Board matters" had a sufficient nexus to her official role despite a disclaimer).

Tellingly, the Commission routinely finds that there is no probable cause for alleged ethics violations where board members have discussed school related issues

on social media in their personal capacity, including even in some instances where the individual elected not to use a disclaimer. *See, e.g.*, *Bentzley v. Giordano*, No. C30-24, at 2, 4-5 (Sch. Ethics Comm'n Jan 28, 2025) (social media activity from personal account referring to teachers; no disclaimer); *Van Allen*, No. 88-23, at 13 (social media post questioning the State-mandated health curriculum; disclaimer indicated the views were personal); *McCooley v. Johnson*, No. C63-24, at 6-7 (Sch. Ethics Comm'n Feb. 22, 2025) (social media post from personal account criticizing school administrators; no disclaimer); *Thor v. Patruno*, No. C34-23, at 9-10 (Sch. Ethics Comm'n Nov. 28, 2023) (social media posts from personal account, which included a disclaimer indicating the views were purely private, criticizing the voting record of another board member and criticizing the board's leadership).

Judged by these standards, it is hard to see how Nazarene could interpret the Commission's precedents to create a substantial risk that the Commission would restrict the kinds of speech she apparently wants to engage in. For example, Nazarene's brief discusses a speech she gave in March 2025 at an Alloway Township meeting about a waste recycling plant and a school in the township, during which she says she "made clear that she spoke in her personal capacity and discussed only public information." Br. at 12. If her description is accurate (i.e. it was clear that she was speaking in her personal capacity), she has no reason to fear that such speech is prohibited based on the clear precedents. Similarly, Nazarene says she made several

13

social media posts about school-related issues, from a clearly personal Facebook account (titled "Gail Nazarene for Alloway"), including some in which she added extensive disclaimers clarifying she was posting in her personal capacity only. Br. at 13, 34; ECF No. 1 ¶¶ 60, 64–65.  Nazarene provides no additional facts to suggest she was simultaneously doing activities that would also cause the public to be confused about the personal status of her messages—and if her messages cannot be perceived as her speaking on behalf of the board, she is unable to point to any precedents justifying a fear that those posts violated the Act.

Nor do the few Commission decisions cited by Nazarene undermine this conclusion. First, Nazarene relies on a 2022 advisory opinion, in which the requesting board member sought the Commission's advice about his desire to answer questions on a Facebook group titled "[School District] Q&A between Parents & the BOE' [(Facebook group)]," using a disclaimer that they spoke only in their personal capacity and as the only board member in the group. *See* ECF 1, Exh. A.  The Commission readily acknowledged that it had no authority to regulate postings the individual made as a private citizen. *Id.* at 4.[3] It nonetheless cautioned that, in this context, it was likely that community members would attribute the board member's statements to the board itself, even in the presence of a disclaimer—

---

[3]  This exhibit is not paginated.  Thus, page numbers are assigned based on the order they appear.

although the Commission also allowed that the analysis might be different if the poster merely was linking to publicly available information. *Id.* Nothing about the Commission's analysis indicates that postings on an *appropriately named* personal page (i.e. one that does not purport to be on behalf of the board) would generally be problematic. And that accords with the numerous decisions cited above (all of which postdate the 2022 opinion) in which the Commission has found no issue with social media posts discussing school matters from clearly personal accounts. *Accord McCooley*, No. C63-24, at 7 (explaining a board member's "social media post … made from her personal account that did not reference her Board membership" is not "offered in an official capacity" merely because it discusses school issues).

The other Commission decisions Nazarene cites also involve circumstances clearly distinguishable from the conduct Nazarene apparently intends to engage in. *Pinto v. Cusato*, No. C74-23 (Sch. Ethics Comm'n July 22, 2025) ("*Pinto I*"), involved a board member's social media comments about book banning, including some in which he explicitly referenced his role as a "member of the BOE" and did not otherwise issue a disclaimer. *Id.* at 2-3. After finding as a factual matter that the posts gave the impression they were made in the poster's capacity as a board member, and after emphasizing the "fact-sensitive" nature of its determination of an ethics violation under N.J. Stat. Ann. § 18A:12-24.1(e), the Commission concluded that this conduct violated the Act and recommended a reprimand. *Id.* at 6-7; *see also*

15

*Pinto v. Cusato*, No. 445-25 SEC (Comm'r of Educ. Sep. 12, 2025) ("*Pinto II*") (concurring with the penalty of reprimand). These unique circumstances find no parallels in the conduct Nazarene intends to engage in, as she has described it in her own filings with this Court, since she apparently intends to speak in ways where it is clear she is speaking on behalf of herself rather than the Board.

The same is true of the *Treston* proceedings. There, a board member received a reprimand for violating N.J. Stat. Ann. § 18A:12-24.1(e) because a reasonable member of the public could conclude that his op-ed (which advocated for and against various board candidates in an upcoming election) gave the false impression of having been written on behalf of the board itself. *In re Treston*, No. 208-21 SEC, at 4 (Comm'r of Educ. Sept. 30, 2021) ("*Treston II*"). Although the board member used a disclaimer, his disclaimer was found to be inadequate in light of his use of "we" and "our" to refer to the board, repeated references to board matters, and the standard disclaimer at the end of the op-ed distancing the website from authors of opinion pieces (which a reasonable person could interpret to indicate that the board member's disclaimer "was meant to distance the website—not the Board—from [his] endorsements"). *Id.*; *see also Treston I*, No. C71-18 at 4, 9, 12. Nothing about *Treston* undermines the broader principle that the Commission accepts statements made solely in a private capacity and that do not falsely give the impression that they

are being made on behalf of the board itself. Indeed, the opinion itself explicitly reiterates this. *See Treston I*, No. C71-18, at 9; *Treston II*, No. 208-21, at 3-4.

Finally, Nazarene errs in relying on *In re Skurbe*, Nos. C75-21 and C37-22 (Sch. Ethics Comm'n July 22, 2025). The reprimanded board member in *Skurbe* had a pattern of posting about issues related to board business on a community Facebook group (including board business that she had "specific knowledge of due to her position on the Board"), only occasionally used a disclaimer, and frequently referenced the board as "we." *Id.* at 2-6, 10. Taking these facts together, the Commission concluded that it appeared that she spoke on behalf of the board in a way that had the potential to compromise the board (and that her official speech also used her position to secure unwarranted advantages for herself and/or a favored group). *Id.* at 10-11. By contrast, Nazarene's complaint suggests that she intends to express only *her* view of school or board-related issues, from a personal account (and apparently with an appropriate disclaimer)—which existing Commission opinions already indicate she is free to do, so long as she uses language that avoids a reasonable member of the public perceiving that she is speaking on behalf of the board. *Accord In re Malespina*, No. C22-22, at 2, 7 (Sch. Ethics Comm'n June 17, 2024) (dismissing complaint based on board member's op-ed about the board that used "we" and "ourselves" repeatedly to refer to the board; in context the board

17

member's disclaimer still made it clear that she spoke only in her personal capacity and not on behalf of the board).

2. Once the Commission's opinions are appropriately understood, there are two important implications for plaintiff's likelihood of success on the merits—the first of which is that she is unlikely to have Article III standing.

Article III standing "is a threshold jurisdictional issue," *Pub. Int. Legal Found. (PILF) v. Sec'y of the Commonwealth of Pa.*, 136 F.4th 456, 461 (3d Cir. 2025), and federal courts must resolve it "before proceeding to the merits," *Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869-70 (3d Cir. 2022). "To have standing, [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *PILF*, 136 F.4th at 461 (citing *Spokeo v. Robins*, 578 U.S. 330, 338 (2016)). Standing must be assessed "for each claim [a plaintiff] bring[s]," *Lewis v. Gov't Emp.'s Ins. Co.*, 98 F.4th 452, 459 (3d Cir. 2024), and "'for each form of relief' that is sought," *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation omitted).

One way that a plaintiff can establish injury-in-fact is by establishing that she intends to engage in proscribed conduct with an imminent (not merely conjectural) threat of government sanction. As applied to a pre-enforcement challenge (like this one), this means in essence that the plaintiff faces either a "certainly impending"

threat of injury, or at least "a substantial risk that the harm will occur." *Nat'l Shooting Sports Found. v. Platkin*, 80 F.4th 215, 221 (3d Cir. 2023) (*NSSF*) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see also Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (explaining that to obtain prospective pre-enforcement relief, a plaintiff "must establish a substantial risk of future injury that is traceable to the . . . defendants and likely to be redressed by an injunction against them" by proffering evidence that the defendants' "allegedly wrongful behavior w[ould] *likely* occur or continue" (emphasis and alteration in original)).

In assessing whether a perceived risk of future enforcement is "substantial" enough, the relevant inquiry is *not* whether the individual plaintiff subjectively feels chilled from engaging in her preferred activities. *See Reading v. North Hanover Twp.*, 124 F.4th 189, 198 (3d Cir. 2024). Otherwise, plaintiffs could manufacture Article III standing solely through their own fears and misconceptions. *See id.* Moreover, when a plaintiff's concern is solely with civil enforcement actions rather than criminal prosecution by the defendants—as here—courts are more stringent in requiring that plaintiffs demonstrate a truly substantial risk necessitating immediate judicial action. *NSSF*, 80 F.4th at 222-23. After all, a plaintiff is always free to raise her constitutional arguments as a defense to any enforcement action the government might take. *See id.*

19

Nazarene cannot meet her burden because she cannot demonstrate a real and substantial risk of future harm that is traceable to Defendants. To the extent she traces her subjective chill to what she calls "the state's interpretation of the [School] Ethics Act" ECF No. 1 ¶¶ 70–72, this brief has previously explained that she has misinterpreted the relevant Commission decisions by selectively citing only a few of them—and then failing to read those decisions within their proper context. If Nazarene truly just wishes to speak by posting on her personal Facebook page, and making comments where she is clearly speaking in her personal capacity and not on behalf of the board (as the verified portions of her complaint appear to indicate), then the Commission's existing decisions indicate she cannot reasonably fear an enforcement action.

It does not matter that Nazarene's fellow board member, and an unnamed school administrator, allegedly press a broader view of the Code of Ethics. As the Third Circuit has recognized, "[t]he relevant analysis focuses on those responsible for enforcement, not those who make" complaints. *Greenberg v. Lehocky*, 81 F.4th 376, 387-88 (3d Cir. 2023). And that is especially so here, since the Commission evaluates all complaints for probable cause, and therefore performs a screening function to ensure complaints the Commission finds unmeritorious do not even proceed to a hearing. *See id.* at 388 (recognizing that if an administrative scheme allows the enforcement body to review complaints before proceeding, the relevant

views are those of the enforcement body); *id.* (distinguishing *Driehaus* on the basis that complaints in that scheme automatically triggered a hearing).

Nazarene is even further off the mark when she discusses training materials from the New Jersey School Board Association. *See* Br. at 10. That entity is neither a defendant in the case, nor an entity charged with interpreting and enforcing the Act, so its training materials in no way control the Commission (or the Commissioner of Education). The question is whether she reasonably fears enforcement by the body with enforcement authority for the speech in which she wishes to engage. She does not.

3. Apart from her Article III standing problem, Nazarene's misunderstanding of the Commission's decisions also shows why she is unlikely to prevail on the merits of her First Amendment claim.[4]

---

[4] Although the complaint alleges that the School Ethics Act—as interpreted by the State—violates the First Amendment on its face, *see* ECF No. 1 ¶ 92, Nazarene argues only an as applied challenge to the Act in her preliminary injunction brief, *see* Br. at 27-35. Indeed, because she concedes that "[n]either the School Ethics Act nor its [C]ode of [E]thics contains any provision or restrictions regarding school board members' communications with constituents about public school-related issues," Compl. ¶ 17, she could not show that the Act is unconstitutional "based on its text alone." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). And because the Act undisputedly regulates a broad range of conduct outside of the First Amendment's scope, Nazarene also cannot show that the "law's unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723-24 (2024).

As a threshold matter, a board member may freely speak in their personal capacity, even discussing school matters, so long as the speech cannot be perceived as official speech on behalf of the board. And, Nazarene's complaint alleges only that she intends to speak in her personal capacity. As such, Nazarene is unlikely to demonstrate that defendants are violating her First Amendment rights. Indeed, for a purported restriction on speech to be unconstitutional, it is axiomatic that this supposed restriction must actually *restrict* speech.

Furthermore, even putting aside that fundamental problem, defendants are at most restricting Nazarene's speech in her official capacity as a member of the board. As discussed above, *see supra* at Section A.1, the Commission has repeatedly disclaimed any authority to regulate board members' purely private speech. That distinction matters under the First Amendment because the government can permissibly regulate speech made in the course of official duties even if it could not make similar restrictions to private speech. *Cf. Garcetti v. Ceballos*, 547 U.S. 410, 418, 422 (2006) (recognizing that government employers can restrict speech by government employees performing official duties, without triggering First Amendment concerns). Indeed, applying principles similar to those articulated in *Garcetti* makes sense in this context: as with a public employee, an elected official speaking in their official capacity is "not speaking as [a] citizen[] for First

Amendment purposes" and is instead performing a role that was "created" by the government itself. *Id.* at 421-22.

Although Nazarene demands an enhanced level of First Amendment protection on the grounds that she is an elected official, Br. at 25-27, none of the cases she cites actually holds that elected officials have more protection relative to other official employees when they purport to speak in their official capacities. *See, e.g.*, *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478-79 (2022) (recognizing simply that official-capacity speech by elected officials, when used to censure the speech of other elected officials, was of equal constitutional dimension as the speech of the censured official and did not constitute unconstitutional retaliation); *Bond v. Floyd*, 385 U.S. 116, 118-25, 132-33 (1966) (recognizing that the state cannot censure a legislator for speech made as a private citizen before taking office, and holding that the state cannot apply a "stricter" standard to legislators than it would to private citizens); *Wood v. Georgia*, 370 U.S. 375, 393-94 (1962) (accepting as true that the statements at issue were made in the individual's capacity as a private citizen, rather than as an elected official, and rejecting the proposition that his elected office provided additional justification for regulating his personal-capacity speech).

23

And these cases certainly do not indicate that an elected official has enhanced protection if she purports to (falsely) speak on behalf of *someone else*.[5]

Under the correct test for restrictions on official capacity speech, Nazarene's First Amendment claim accordingly fails. But even assuming Nazarene is correct in treating defendants' restrictions as content-based ones that trigger strict scrutiny under the First Amendment, defendants' *actual* policy still likely passes constitutional muster. Under strict scrutiny, the question is whether the Commission's limited regulation of board member speech (1) serves a compelling government interest; (2) is narrowly tailored to serve that interest; and (3) is the least restrictive means of achieving that interest. *In re Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020).

New Jersey has a compelling interest in maintaining public confidence in the school system. *See Jerrytone v. Musto*, 167 F. App'x 295, 301 (3rd Cir. 2006) (recognizing "the strength of [this] interest" in the due process context); *see also* N.J. Stat. Ann. § 18A:12-22 (explaining that the Act is premised on the legislature's

---

[5] District courts in this Circuit and elsewhere are split on whether the *Garcetti* test applies to elected officials. *Compare*, *e.g.*, *Goode v. Camden City Sch. Dist.*, 2017 WL 2265146, at *4 (D.N.J. May 24, 2007), *with*, *e.g.*, *Werkheiser v. Pocono Twp.*, 210 F. Supp. 3d 633, 637-40 (M.D. Pa. 2016). The Third Circuit has not yet resolved the issue, instead concluding that the law is "not clearly established on this point." *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 177-81 (3d Cir. 2015). As noted in the main text, our position is not that *Garcetti* directly applies here. Rather, we think that the principles articulated in *Garcetti* are properly analogized to this context.

finding that "it is essential that the conduct of members of local boards of education and local school administrators hold the respect and confidence of the people."). And its interest in ensuring the integrity of its local school boards—government entities which set school policy in public schools—is heightened by its undisputed interest in public education. *See Phila. City Council v. Schweiker*, 40 F. App'x 672, 677 (3d Cir. 2002) ("It is well-known that education is a state policy of paramount importance"). To effectuate these interests in the actual and perceived impartiality and integrity of school boards, and to avoid members of the public being confused about which ideas and policies are attributable to a school board as a whole rather than to its individual members, the Commission interprets N.J. Stat. Ann. § 18A:12-24.1(e) to protect a board member's "right to free speech to express his own opinion," while still prohibiting board members from "convey[ing] the impression that [their] opinion is the Board's opinion." *Treston II*, No. 208-21, at 3.[6]

The Commission's interpretation is also narrowly tailored to serve its interest in distinguishing the views of individual board members from the position of school boards as governmental bodies. Indeed, "[b]y any measure," the Commission's

---

[6] The Commission's interest is thus not, as Nazarene suggests, ensuring that "elected officials . . . speak with one voice," *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 178 (3d Cir. 2015), but rather that elected officials not misrepresent their own opinions or policy positions to be those of the board. *See* Br. at 28, 30. Indeed, a statement by a board member specifically noting that her perspective dissents from that of her colleagues would be especially free from enforcement risk, as it would be quite clear from context that she is not speaking for the relevant board writ large.

interpretation "restricts a narrow slice of speech." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 452 (2015) (upholding Florida's restriction on judicial candidates prohibiting them from soliciting campaign contributions as narrowly tailored to the state's interest in the integrity of its judiciary). Nazarene's contrary suggestion that the Commission's enforcement is "seriously overinclusive," Br. at 31, is based on her misinterpretation of the Commission's precedents. The Commission does not restrict board members from expressing their personal view on issues that relate to the board's business, operations, or elections—it merely requires that they make clear they are expressing those views on their own behalf. And in any event, the First Amendment requires narrow tailoring, not perfect tailoring. *Williams-Yulee*, 575 U.S. at 454 (internal citation omitted). The Commission's interpretation meets this standard because it strikes an appropriate "'balance between First Amendment rights and the government's [compelling interest]"—its limitation on ambiguously speaking on behalf of the board is narrowly tailored to preserve the public's confidence in the board's integrity and impartiality on issues that have come up or may come up before it. *See In re Subpoena 2018R00776*, 947 F.3d at 158.

The Commission's narrow regulation of speech also distinguishes this case from those in which elected officials were restricted from (or retaliated against for) sharing their own opinion as elected officials. *See, e.g.*, *Bond*, 385 U.S. at 136-37 (1966) (elected official's First Amendment rights violated when fellow legislators

refused to seat him due to his statements on the Vietnam war); *Wood*, 370 U.S. at 388-94 (contempt order against elected sheriff for out-of-court letter expressing his personal views on judicial conduct violated the sheriff's First Amendment rights). Indeed, the Commission's decisions make it clear that board members do not violate the Act merely by "tak[ing] positions on controversial political questions." *Bond*, 385 U.S. at 136; *see also, e.g.*, *Rose v. Francis*, No. C35-20, at 3, 7 (Sch. Ethics Comm'n June 22, 2022) (finding no violation where board members wrote op-ed on race issues in the district, and identified themselves as board members, but they did not purport to speak on behalf of the board); *Schwartz v. Abedrabbo*, No. C40-21, at 3-6 (Sch. Ethics Comm'n Jan. 25, 2022) (no violation found when board members made personal comments about Palestine at a public board meeting); *see also Strehle v. Baird*, No. C91-23, at 5 (Sch. Ethics Comm'n July 23, 2024) (finding no probable cause for violations based on a board member's Facebook comments describing transgender students as mentally ill, and explaining that complainant's disagreement with the board member's views did not render the view an ethics violation).

Finally, the Act's restriction on speech, as interpreted by the Commission, is the least restrictive means of advancing the State's interest. "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000). But

the "less restrictive alternative" Nazarene proposes, borrowed from the Supreme Court's recent decision in *Lindke v. Freed*, 601 U.S. 187 (2024), is indistinguishable from the test that the Commission *already* applies. *See* Br. at 32-33. In *Lindke*, the Court explained that an official's social media posts are attributable to the State for purposes of 42 U.S.C. § 1983 "only if the official" possessed actual authority to speak for the State, and then "purported to exercise that authority when he spoke on social media." 601 U.S. at 191. *Lindke*'s first prong is not directly applicable, as it is tied to § 1983's "bedrock requirement" that the official conduct complained of be "fairly attributable to the State." *Id.* at 198 (cleaned up). But its second prong is an appropriate analogy, and the Commission's approach mirrors the Court's guidance in assessing whether a board member "is speaking in his own voice." *Id.* at 201. Both the Court and the Commission place importance on the power of a disclaimer to clarify the capacity that an official speaks in. *See id.* at 202 (the use of an appropriate disclaimer would entitle an official "to a heavy (though not irrebuttable) presumption that all of the posts on his page were personal"); *In re Malespina,* No. C22-22, at 6-7 (Sch. Ethics Comm'n June 17, 2024) (social media activity does not violate the Act when the speaker uses an adequate disclaimer). In the absence of a clear disclaimer, both the Court and the Commission undertake "fact-specific" inquiries that account for the post's content and other factors. *See Lindke*, 601 U.S. at 203. The Commission's test considers both the post's content—i.e., whether it is

28

school-related—and the broader fact-specific context for whether there is a sufficient nexus to the board member's position on the board. *See supra* Section A.1.

Nazarene also suggests that the State could achieve its interests with "more speech"—i.e., having the board speak for itself. *See* Br. at 34-35. But it would be exceedingly difficult for school boards to clarify their official positions in real time, such that the State's interest could be achieved. Other Board members may be unaware of (or not regularly monitoring at all hours) all possible social media accounts and forums where this issue might arise. And because boards are multi-member bodies, fragmentation in the opinions of individual members may mean that the board has a whole has *no* opinion at all on a given issue. Much more effective and straightforward is the State's current policy, which encourages board members (who know about their own social media and other statements) to clarify in real time whether they are speaking in a personal or official capacity, and allows all board members to speak for themselves, but not falsely for the board itself.

## B. Nazarene Is Unlikely To Suffer Any Irreparable Harm That A Preliminary Injunction Could Address.

Entirely apart from Nazarene's failure to establish a likelihood of success on the merits, she has independently failed to show that she is suffering any irreparable harm that could be remedied by the preliminary injunction she is requesting. The entire purpose of a preliminary injunction is just to "preserve the relative positions of the parties until a trial on the merits can be held." *Starbucks Corp. v. McKinney*,

602 U.S. 339, 346 (2024) (internal citation and quotation marks omitted). Yet Nazarene has nothing to fear from defendants pending final judgment. Under State law, Nazarene's mere act of filing the underlying lawsuit bars the Commission from taking any action on any current or future complaint against Nazarene that relates to the issues in her case. N.J. Stat. Ann. § 18A:12-32 and N.J. Admin. Code § 6A:28-1.5. And consistent with this, shortly after this lawsuit was filed the Commission formally put into abeyance the proceedings involving the April 2025 complaint against Nazarene. Moreover, any future complaints filed with the Commission against Nazarene that raise similar issues concerning her speech about matters of public concern on any social media or internet platform may be stayed by operation of State law while this litigation is pending.  N.J. Stat. Ann. § 18A:12-32; N.J. Admin. Code. § 6A:28-1.5.  As a result, since defendants' sole means of imposing discipline on Nazarene would be through the formal complaint process, Nazarene already possesses the equivalent of what a preliminary injunction would otherwise achieve—the confidence that defendants can take no adverse action against her for her speech during the pendency of this lawsuit.

Tellingly, Nazarene's discussion of irreparable harm in her brief completely ignores this fatal problem. Instead, she just cites case law generically recognizing that the loss of First Amendment freedoms will generally constitute irreparable harm. *See* Br. at 35-36.  That dramatic oversimplification of this unique factual

30

context hardly suffices. And that is especially so because as the movant, Nazarene bears the burden of showing that it is "more likely than not" that she would "suffer irreparable harm" during the pendency of the action "in the absence of preliminary relief." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (internal citation and quotation marks omitted).

It does not matter for these purposes that Nazarene may be concerned that more complaints will be filed against her if she resumes making the same kinds of social media posts that led to the earlier complaint. The Commission would still be required to put into abeyance any such complaints it receives in the future to the extent that they relate to the same subject matter of this litigation, pending final judgment in Nazarene's lawsuit. N.J. Admin. Code § 6A:28-1.5. And a preliminary injunction against *defendants* (who are all State officials) would neither prevent third parties from filing complaints, nor alter what the Commission would do with those complaints once this lawsuit is over (and the abeyance is lifted). Similarly, to the extent Nazarene alleges she is at risk of harm because of "the warnings and admonishments she has received" from a school board president and school administrator, those concerns are irrelevant. *See* ECF No. 1 ¶¶ 58-59, 62-63, 67-70. Neither individual is a named party in this matter, and they would not be bound by any preliminary injunction Nazarene could obtain against any of the defendants.

Nazarene's lack of irreparable harm is further underscored by the fact that she waited more than *seven months* after an Alloway Township board member filed the April 6, 2025, complaint against her before she filed her current federal court complaint on November 20, 2025. That suggests Nazarene understood that the mere pendency of a complaint before the Commission (and the possibility that more might be filed) was causing her no irreparable harm at all. *See* ECF No. 1 ¶¶ 67-69; *see also* Br. at 3, 36. *Accord, e.g.*, *Pharmacia Corp. v. Alcon Labs.*, Inc., 201 F. Supp. 2d 335, 382-83 (D.N.J. 2002) (noting delay can "knock[] the bottom out of any claim of immediate and irreparable harm" and offers a "dispositive basis" for rejecting a preliminary injunction motion); *DSSA*, 108 F.4th at 206 (citing four-month delay in seeking injunction as a basis to deny relief).

### C. The Remaining Equitable Factors Likewise Favor Denying The Preliminary Injunction Motion.

Because Nazarene has failed to satisfy either of the "gateway factors," this Court must deny her motion for preliminary injunction. But even if Nazarene had established those two factors, the Court would then need to balance all four factors to reach its decision. *Reilly*, 858 F.3d at 176. And when the State is the opposing party, the last two factors—the harm to the opposing party and the public interest—merge. *DSSA*, 108 F.4th at 205 (citing *Nken*, 556 U.S. at 435). These remaining factors weigh in favor of denying the preliminary injunction.

Granting Nazarene's requested motion would inflict an injury upon the State, since the injunction would supersede the Act, and defendants would be precluded from effectuating a law passed by the Legislature and signed by the Governor. After all, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Id.* at 206 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).

Defendants play a key role in ensuring that school officials conduct themselves in a manner that promotes public trust. They are tasked with effectuating the Act, which was passed by the Legislature and signed by the Governor. And ironically, Plaintiff's preferred preliminary remedy (no action by defendants to enforce the Act against her while the case is litigated to final judgment) is already imposed by the very Act she challenges as to the types of speech and potential Act violations that constitute the subject matter of this lawsuit. The balance of harms thus favors defendants.

## <u>CONCLUSION</u>

This Court should deny the motion for preliminary injunction.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    */s/ Vijayasri G. Aryama*
Vijayasri G. Aryama
Deputy Attorney General

Date:  January 6, 2026