## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAIL NAZARENE, | Hon. Christine P. O'Hearn, U.S.D.J. |
| | Hon. Matthew J. Skahill, U.S.M.J. |
| Plaintiff, | |
| | |
| v. | Civil Action No.: 1:25-cv-17770 |
| | |
| KEVIN DEHMER, as New Jersey Department of Education Commissioner; ROBERT W. BENDER, as New Jersey School Ethics Commission Chairperson; MICHAL CARUCCI, MARK J. FINKELSTEIN, DENNIS ROBERTS, CAROL E. SABO, and RICHARD TOMKO, as New Jersey School Ethics Commission members, | |
| | |
| Defendants. | |

---

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

---

JENNIFER DAVENPORT
ACTING ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex, P.O. Box 112
Trenton, New Jersey 08625
(609) 376-3100
Attorney for Defendants

Benjamin M. Shultz
Assistant Attorney General

Vijayasri G. Aryama
Luke D. Hertzel-Lagonikos
Naima Drecker-Waxman
Deputy Attorneys General

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................2

    I.  The School Ethics Act .................................................................................2

    II. This Lawsuit ..............................................................................................5

LEGAL STANDARD .........................................................................................7

ARGUMENT .......................................................................................................8

    I.  Nazarene's Entire Suit Is Based on a Fundamental
        Misunderstanding About the Kinds of Speech That
        Defendants Regulate ...............................................................................8

    II. Once the Court Accounts for Defendants' Actual Opinions
        Applying the School Ethics Act, the Court Must Dismiss
        the Complaint ..........................................................................................16

            A.  The Complaint Fails to Plausibly Allege Standing..................16

            B.  The Complaint Fails to State Any Actionable First
               Amendment Claim .................................................................21

CONCLUSION ...................................................................................................30

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Page(s)**

*Babbitt v. Farm Workers,*
    442 U.S. 289, 298 (1979)....................................................................................17

*Barrow v. Greenville Indep. Sch. Dist.,*
    332 F.3d 844 (5th Cir. 2003) .........................................................................25

*Bond v. Floyd,*
    385 U.S. 116 (1966)...........................................................................23, 26, 27

*CMR D.N. Corp. v. City of Philadelphia*
    703 F.3d 612 (3d Cir. 2013)............................................................................21

*Ellison v. Am.Bd. of Orthopaedic Surgery*
    11 F.4th 200 (3d Cir 2021)................................................................................8

*FEC v. Cruz,*
    596 U.S. 289 (2022)........................................................................................19

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006).................................................................................22, 23

*Goode v. Camden City Sch. Dist.,*
    2017 WL 2265146 (D.N.J. May 24, 2007).....................................................24

*Greenberg v. Lehocky,*
    81 F.4th 376 (3d Cir. 2023) .....................................................................19, 20

*Grp. Against Smog & Pollution, Inc. v. Shenango Inc.,*
    810 F.3d 116 (3d Cir. 2016)..............................................................................2

*Houston Cmty. Coll. Sys. v. Wilson,*
    595 U.S. 468 (2022).......................................................................................23

*In re Subpoena 2018R00776,*
    947 F.3d 148 (3d Cir. 2020).....................................................................24, 26

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*
    672 F.3d 235 (3d Cir. 2012)................................................................8

*Jerrytone v. Musto*,
    167 F. App'x 295 (3rd Cir. 2006)....................................................24

*Lindke v. Freed*,
    601 U.S. 187 (2024)...............................................................27, 28

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992)..................................................................16

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)..............................................................21, 22

*Murthy v. Missouri*,
    603 U.S. 43 (2024)...................................................................17

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*,
    80 F.4th 215 (3d Cir. 2023) .........................................................18

*Phila. City Council v. Schweiker*,
    40 F. App'x 672 (3d Cir. 2002) .....................................................25

*Pub. Int. Legal Found. (PILF) v. Sec'y of the Commonwealth of Pa.*,
    136 F.4th 456  (3d Cir. 2025) ......................................................16

*Reading v. North Hanover Twp.*,
    124 F.4th 189 (3d Cir. 2024) ...................................................17, 19

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010)........................................................7, 8

*Spokeo v. Robins*,
    578 U.S. 330 (2016)..................................................................16

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014).............................................................*passim*

*United States v. Marcavage*,
    609 F.3d 264 (3d Cir. 2010)............................................................21

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)......................................................................27

*Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*
    959 F.3d 569 (3d Cir. 2020)............................................................16

*Werkheiser v. Pocono Twp.*,
    780 F.3d 172 (3d Cir. 2015)............................................................24

*Werkheiser v. Pocono Twp.*,
    210 F. Supp. 3d 633 (M.D. Pa. 2016)..............................................24

*Williams-Yulee v. Florida Bar*,
    575 U.S. 433 (2015)......................................................................26

*Wood v. Georgia*,
    370 U.S. 375 (1962).................................................................23, 26

## FEDERAL STATUTES

42 U.S.C. § 1983.................................................................................28

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1)........................................................................8

Fed. R. Civ. P. 12(b)(6)........................................................................8

iv

# STATE STATUTES

N.J. Stat. Ann. § 18A:6-9.1 ........................................................................ 4

N.J. Stat. Ann. § 18A:12-22 .............................................................. 2, 24, 25

N.J. Stat. Ann. § 18A:12-22(a) ...................................................................2

N.J. Stat. Ann. § 18A:12-24(b) ...................................................................3

N.J. Stat. Ann. § 18A:12-24(e) ...................................................................3

N.J. Stat. Ann. § 18A:12-24.1 ....................................................................3

N.J. Stat. Ann. § 18A:12-24.1(a) ................................................................3

N.J. Stat. Ann. § 18A:12-24.1(b) ................................................................3

N.J. Stat. Ann. § 18A:12-24.1(e) .................................................3, 9, 14, 25

N.J. Stat. Ann. § 18A:12-27(a)-(b) .............................................................3

N.J. Stat. Ann. § 18A:12-28(b) ...................................................................4

N.J. Stat. Ann. § 18A:12-29(a) ...................................................................3

N.J. Stat. Ann. § 18A:12-29(b) ................................................................3, 4

N.J. Stat. Ann. § 18A:12-29(c) ...................................................................4

N.J. Stat. Ann. § 18A:12-29(d) ...................................................................4

N.J. Stat. Ann. § 18A:12-29.1 .................................................................4, 5

N.J. Stat. Ann. § 18A:12-31 ....................................................................4, 5

N.J. Stat. Ann. § 18A:12-32 ................................................................5, 7, 20

# OTHER AUTHORITIES

*Aziz v. Nikitinsky, et al., Monroe Twp. Bd. of Educ., Middlesex Cnty.*,
No. C56-22 (Sch. Ethics Comm'n Oct. 17, 2022) ............................................ 10

*Bentzley v. Giordano*,
No. C30-24 (Sch. Ethics Comm'n Jan 28, 2025 .............................................. 11

*Hyett v. Bellomo*,
No. C96-24 (Sch. Ethics Comm'n Sep. 23, 2025) .................................... 10, 11

*In re Skurbe*,
Nos. C75-21 and C37-22 (Sch. Ethics Comm'n July 22, 2025) .................... 15

*In re Malespina*,
No. C22-22 (Sch. Ethics Comm'n June 17, 2024) ................................... 16, 28

*In re Treston*,
No. C71-18 (Sch. Ethics Comm'n Apr. 17, 2021) ................................... 10, 15

*In re Treston*,
No. 208-21 SEC (Comm'r of Educ. Sept. 30, 2021) .......................... 14, 15, 25

*McCooley v. Johnson*,
No. C63-24 (Sch. Ethics Comm'n Feb. 22, 2025) ................................... 11, 13

*Pinto v. Cusato*,
No. C74-23 (Sch. Ethics Comm'n July 22, 2025) .................................... 13, 14

*Pinto v. Cusato*,
No. 445-25 SEC (Comm'r of Educ. Sep. 12, 2025) ....................................... 14

*Rose v. Francis*,
No. C35-20 (Sch. Ethics Comm'n June 22, 2022) ......................................... 27

*Schwartz v. Abedrabbo*,
No. C40-21 (Sch. Ethics Comm'n Jan. 25, 2022) ......................................... 27

*Strehle v. Baird*,
No. C91-23 (Sch. Ethics Comm'n July 23, 2024) .......................................... 27

*Thor v. Patruno*,
    No. C34-23 (Sch. Ethics Comm'n Nov. 28, 2023)..........................................11

*Van Allen v. Alfano*,
    No. C88-23, at 8(Sch. Ethics Comm'n June 17, 2024) ...........................10, 11

## REGULATIONS

N.J. Admin. Code § 6A:4-1.3(c)(2) ...........................................................................4

N.J. Admin. Code § 6A:4-1.3(c)(3) ...........................................................................4

N.J. Admin. Code § 6A:28-1.5 ..................................................................................5

N.J. Admin. Code. § 6A:28-5.1 to 5.2 ....................................................................4, 5

N.J. Admin. Code § 6A:28-9.7 ..................................................................................3

## **INTRODUCTION**

This lawsuit is based on plaintiff's fundamental misunderstanding about the scope of the School Ethics Act, and about how the defendants have interpreted it. Plaintiff Gail Nazarene, a member of the Alloway Township Board of Education, wants to use social media in her personal capacity to discuss matters relating to local schools. As indicated by the allegations in the complaint, she plans to accomplish this by making postings from a personal social media account.  In the past, she has been willing to use a clear disclaimer indicating that she is speaking only for herself, and not for the broader Board. But defendants do not regulate the type of conduct Nazarene describes. As Nazarene admits, nothing in the School Ethics Act itself contains such restrictions. And while Nazarene points to various advisory and other opinions issued by defendants to claim that they sanction such speech, she has misread and misunderstood the opinions she relies on—a point reinforced by other opinions Nazarene fails to address.

Once the Court properly accounts for all of this, it should dismiss Nazarene's complaint for lack of subject matter jurisdiction and failure to state a claim on which this Court can grant relief. First, Nazarene lacks Article III standing because there is no substantial chance that defendants will regulate her desired conduct, so she has suffered no injury in fact that this lawsuit could redress. Second, Nazarene's as-applied First Amendment claim fails because defendants' regulatory actions—

1

properly understood—do not restrict the kinds of private-capacity speech Nazarene says she wants to engage in, and thus cannot violate the Constitution. Moreover, when board members clearly speak in their individual capacities, defendants do not consider such speech to trigger the ethics concerns associated with school-related speech on behalf of the board—and so the restrictions that defendants *do* impose on board members are narrowly tailored to serve important State interests. Finally, Nazarene's facial First Amendment challenge fails in light of Nazarene's concessions about the legitimate scope of the School Ethics Act.

## **BACKGROUND**[1]

### I.     **The School Ethics Act**

New Jersey's School Ethics Act (Act), N.J. Stat. Ann. § 18A:12-22 *et seq.*, seeks to ensure that "the conduct of members of local boards of education and local school administrators hold the respect and confidence of the people." N.J. Stat. Ann. § 18A:12-22(a). Among other things, the Act bars such officials from engaging in various activities that can create a conflict of interest, such as using one's official position to secure "unwarranted privileges, advantages or employment" for himself or his immediate family, or accepting items of value "for the purpose of influencing

---

[1] Defendants recite only those facts alleged in the Complaint or stated in the exhibits thereto, as well as facts of which the Court may take judicial notice. *See Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016). For purposes of the motion to dismiss, defendants take the facts alleged in the complaint as true. *See id.*

him … in the discharge of his official duties." *Id.* § 18A:12-24(b), (e). In addition, the Act requires school board members to abide by a Code of Ethics with ten listed provisions. *See id.* § 18A:12-24.1. Those provisions include pledges to "make decisions in terms of the educational welfare of children"; to "recognize that authority rests with the board of education" as an entity and to not take "any private action that may compromise the board"; and to uphold "all laws, rules and regulations of the State Board of Education." *Id.* § 18A:12-24.1(a), (b), (e).

The Act also creates a nine-member School Ethics Commission (Commission), within the State's Department of Education, which enforces the Act by adjudicating complaints. *Id.* § 18A:12-27(a)-(b). That process begins when "[a]ny person, including a member of the [C]omission," files a complaint with the Commission alleging a violation of the Act (including the Code of Ethics). *Id.* § 18A:12-29(a). The Commission then serves a copy on each school official named in the complaint and provides them an opportunity to respond. *Id.* § 18A:12-29(b). Thereafter, the Commission decides whether probable cause exists to "credit the allegations in the complaint," accounting for the requirement that if the complaint alleges a violation of the Code of Ethics, the burden of proof rests with the accusing party. *Id.*; *see also* N.J. Admin. Code § 6A:28-9.7.

If the Commission decides that probable cause does not exist, the complaint is dismissed as the agency's final agency action. N.J. Stat. Ann. § 18A:12-29(b). If

the Commission finds probable cause does exist, and there are factual issues in dispute, it refers the matter to the Office of Administrative Law for a hearing.[2] *Id.* Once that hearing is completed, the Commission decides if the relevant conduct constitutes a violation of the Act (including the Code), and it provides written findings of fact and conclusions of law. *Id.* § 18A:12-29(c). If a violation is found, the Commission also recommends a penalty of reprimand, censure, suspension, or removal to the Commissioner of Education, who thereafter imposes a sanction. *Id.* Individuals unhappy with a Commission decision may appeal directly to the Commissioner of Education, whose ultimate decision constitutes final agency action reviewable in the Appellate Division of the Superior Court. *Id.* §§ 18A:6-9.1, 18A:12-29(d), 18A:12-29.1; N.J. Admin. Code § 6A:4-1.3(c)(2), (3).[3]

Apart from its complaint adjudication role, the Commission also has the power to provide guidance about the Act by issuing "advisory opinions," N.J. Stat. Ann. § 18A:12-28(b). By statute, any school official can "request and obtain from the [C]ommission an advisory opinion as to whether any proposed activity or conduct would" violate the Act. N.J. Stat. Ann. § 18A:12-31; *see also* N.J. Admin.

---

[2]  If there are no factual issues, the Commission may retain the matter for decision on a summary basis.

[3] Commission opinions are available online, *see* https://www.nj.gov/education/legal/ethics/index.shtml, as are the Commissioner's opinions, *see* https://www.nj.gov/education/legal/commissioner/index.shtml.

Code. § 6A:28-5.1 to 5.2. By default, these opinions are not made public, but they can be made public if at least six commissioners vote to do so, N.J. Stat. Ann. § 18A:12-31, and the Commission has elected to publish many of these opinions on its website, *see* https://www.nj.gov/education/legal/ethics/advisory/. Further, advisory opinions are intended to provide guidance on fact specific scenarios and they are not final agency decisions. *See* N.J. Stat. Ann. § 18A:12-29.1 and -31. The Commission also cannot issue an advisory opinion if the underlying issue relates to an existing matter pending before another court or administrative agency of the State. N.J. Stat. Ann. § 18A:12-32; N.J. Admin. Code § 6A:28-1.5.

## II.    This Lawsuit

Plaintiff Gail Nazarene is a member of the Alloway Township Board of Education (Board). *See* Compl., ECF 1 ¶ 9. During her campaign for office, Nazarene had posted on Facebook using a personal Facebook page called "Gail Nazarene for Alloway School Board." *Id.* ¶ 54. After her election, and assumption of office in February 2025, Nazarene "continued to use her personal Facebook page" to communicate with community members, retitling the page to "Gail Nazarene for Alloway." *Id.* ¶ 60. Nazarene says that these activities led to criticism from both a fellow board member and an Alloway school administrator, who may have been concerned that she was violating the Code of Ethics. *Id.* ¶¶ 58, 61-63. In response, Nazarene started giving her posts clear disclaimers, such as an April 3, 2025 post in

which she indicated she was "asking for myself AND ONLY FOR MYSELF," and an April 4, 2025 post in which she said she was making statements "in my capacity as a private citizen, and not in my capacity as a board member," and further added that her statements were "not representative of the Board." *Id.* ¶¶ 64-65.

Despite the disclaimers on these early April 2025 posts, a fellow member of Alloway's school board filed a complaint that same month with the Commission, alleging that these posts (and an earlier March one without a clear disclaimer) violated the Code of Ethics. *See id.* ¶ 67, ECF 1, Exh. C. Nazarene filed a written statement in response, *see* ECF 1, Exh. D, and the complaint remains pending with the Commission, ECF 1 ¶ 69.

On November 20, 2025—more than seven months after her fellow board member filed the complaint against her—Nazarene filed in this Court a complaint and contemporaneous motion for preliminary injunction. (ECF Nos. 1 to 1-5 and 4 to 4-2). The listed defendants were the Commissioner of Education and the current members of the Commission. ECF 1 ¶¶ 11-13.

Nazarene's complaint sought declaratory and injunctive relief for an asserted First Amendment violation, *id.* at ¶¶ 88-99, and she claims that in light of the April 2025 complaint against her (filed by an Alloway School Board Member), and the warnings she had previously received (from an Alloway School Board Member and Alloway School Administrator), she has been too afraid to post online about matters

6

related to Alloway schools. *See id.* at ¶¶ 70-79. Nazarene attributes her subjective fear to what she calls "the state's interpretation of the Ethics Act," *id.* ¶ 70, and she maintains that the State interprets the Act to "prohibit essentially all communications by board members about school board matters" and related topics. *Id.* ¶ 48.

On November 26, 2025, at Nazarene's request, the parties agreed that until the preliminary injunction motion is decided, "Defendants will take no action (other than to move a matter in abeyance pursuant to N.J. Stat. Ann. § 18A:12-32, on any matters initiated under the School Ethics Act) and will impose no sanctions against Gail Nazarene for speech about matters of public concern on any social media or internet platform." *See* ECF 20.[4] On December 16, 2025, the Commission placed the April 2025 complaint against Nazarene into abeyance.

Nazarene's motion for preliminary injunction is pending before this Court with oral argument scheduled for February 17, 2025.

## LEGAL STANDARD

In reviewing the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court assesses whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (citation omitted). In

---

[4] N.J. Stat. Ann. § 18A:12-32 states, "[t]he commission shall not process any complaint, issue a final ruling or issue any advisory opinion on a matter actually pending in any court of law or administrative agency of this State."

its analysis, this Court disregards the complaint's legal conclusions and conclusory allegations. *Id.* For "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing [the standing elements]," and if they fail to establish standing, dismissal is appropriate under Fed. R. Civ. P. 12(b)(1). *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205, 209 (3d Cir. 2021) (internal citation omitted). Courts "evaluating whether a complaint adequately pleads the elements of standing" will apply the same standards as those for motions to dismiss under Rule 12(b)(6). *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

## <u>ARGUMENT</u>

To survive defendants' motion to dismiss, Nazarene's complaint must plausibly allege Article III standing and that defendants are violating her First Amendment rights. But Nazarene misunderstands the kinds of speech that defendants regulate, and she relies on erroneous legal conclusions that this Court may disregard. Thus, she has not plausibly alleged Article III standing or that defendants are violating her First Amendment rights, and the Complaint should be dismissed.

## I.    Nazarene's Entire Suit Is Based on a Fundamental Misunderstanding About the Kinds of Speech That Defendants Regulate

Fundamental to all of Nazarene's arguments is her belief that defendants interpret the School Ethics Act to "prohibit[] essentially all communications by

board members about school board matters" and related topics, especially on social media. ECF 1 ¶¶ 2, 48. But Nazarene is mistaken, and this conclusory allegation is contradicted by the Commission's published opinions. She is entirely free to speak on these matters in her personal capacity, so long as she follows gentle guardrails. For the most part, that just means Nazarene must avoid creating a reasonable perception among the public that she is speaking in her official capacity as a Board member.

As an initial matter, Nazarene's own complaint concedes that neither the Act nor the Code of Ethics contain explicit provisions that directly restrict school board members' communications with constituents about school related issues. *See* ECF 1 ¶ 17. To the extent Nazarene has any concerns at all, they instead appear to relate to how she believes that the Commission has interpreted, in other cases, various parts of the Code of Ethics, particularly the portions requiring that Board members "recognize that authority rests with the board of education" as an entity, and that they not take "any private action that may compromise the board." N.J. Stat. Ann. § 18A:12-24.1(e).

Commission opinions interpreting that provision, however, have recognized that ethics concerns with public statements (such as those on social media) will arise only if "a reasonable member of the public could perceive that the [board member] is speaking in his or her official capacity or pursuant to his or her official duties."

9

*See, e.g.*, *Van Allen v. Alfano*, No. C88-23, at 8 (Sch. Ethics Comm'n June 17, 2024) (quoting *Aziz v. Nikitinsky, et al., Monroe Twp. Bd. of Educ., Middlesex Cnty.*, No. C56-22, at 8 (Sch. Ethics Comm'n Oct. 17, 2022)). If the speech is unrelated to the board's business or operations, the board member could not possibly be perceived as speaking in an official capacity, and there is no concern at all. *Id*. And even if the speech is related to the board's business or operations, the Commission still considers whether there is sufficient nexus between the post and the board member's board position, such that the board member could be perceived as speaking in an official capacity. *Id*. at 9. If the Commission concludes such a sufficient nexus exists, it then goes on to consider whether a complainant established the elements of an alleged violation of the ethics code. *See, e.g., id.* at 13. In this regard, the Commission's opinions recognize that a disclaimer will generally be an effective way of clarifying that the board member is speaking in their personal capacity— although a disclaimer is not "dispositive" because the Commission allows for unusual situations where the surrounding facts and circumstances render the disclaimer ineffective. *See, e.g.*, *id.* at 8 (quoting *Aziz*, No. C56-22, at 8); *see also In re Treston*, No. C71-18, at 9 (Sch. Ethics Comm'n Apr. 17, 2021) ("*Treston I*") (explaining this contextual approach ensures that disclaimers are not a mere formality that board members treat as a "carte blanche to then discuss Board business and/or matters in a way that is, or appears to be, on behalf of the Board"); *Hyett v.*

10

*Bellomo*, No. C96-24, at 5 (Sch. Ethics Comm'n Sep. 23, 2025) (board member's Facebook post sharing "an email she received as a Board member and commenting on Board matters" had a sufficient nexus to her official role despite a disclaimer).

Tellingly, the Commission routinely finds that there is no probable cause for alleged ethics violations where board members have discussed school related issues on social media in their personal capacity, including even in some instances where the individual elected not to use a disclaimer. *See, e.g.*, *Bentzley v. Giordano*, No. C30-24, at 2, 4-5 (Sch. Ethics Comm'n Jan 28, 2025) (social media activity from personal account referring to teachers; no disclaimer); *Van Allen*, No. 88-23, at 13 (social media post questioning the State-mandated health curriculum; disclaimer indicated the views were personal); *McCooley v. Johnson*, No. C63-24, at 6-7 (Sch. Ethics Comm'n Feb. 22, 2025) (social media post from personal account criticizing school administrators; no disclaimer); *Thor v. Patruno*, No. C34-23, at 9-10 (Sch. Ethics Comm'n Nov. 28, 2023) (social media posts from personal account, which included a disclaimer indicating the views were purely private, criticizing the voting record of another board member and criticizing the board's leadership).

Judged by these standards, it is hard to see how the Commission's precedents create a substantial risk that the Commission would restrict the kinds of speech Nazarene apparently wants to engage in. For example, Nazarene's complaint discusses a comment she made in March 2025 at an Alloway Township meeting

11

about a waste recycling plant and a school in the township, during which she says she "made clear . . . that she spoke in her personal capacity" and "discussed only public information." ECF 1 ¶¶ 56-57. If her description is accurate (i.e., it was clear that she was speaking in her personal capacity), she has no reason to fear that such speech is prohibited based on the Commission's precedents. Similarly, Nazarene says she made several social media posts about school-related issues, from a clearly personal Facebook account (titled "Gail Nazarene for Alloway"), including some in which she added extensive disclaimers clarifying she was posting in her personal capacity only. ECF 1 ¶¶ 60, 64-65. Nazarene provides no additional facts to suggest she was simultaneously doing activities that would also cause the public to be reasonably confused about the personal status of her messages—and if her messages cannot reasonably be perceived as her speaking outside of her personal capacity, she is unable to point to any precedents justifying an objective fear that those posts violated the Act.

Nor do the few Commission decisions cited by Nazarene undermine this conclusion. First, Nazarene relies on a 2022 advisory opinion, in which the requesting board member sought the Commission's advice about his desire to answer questions on a Facebook group titled "'[School District] Q&A between Parents & the BOE' [(Facebook group)]," using a disclaimer that they spoke only in their personal capacity and as the only board member in the group. *See* ECF 1, Exh. A.

12

The Commission readily acknowledged that it had no authority to regulate postings the individual made as a private citizen. *Id.* at 4.[5] It nonetheless cautioned that, in this context, it was likely that community members would attribute the board member's statements to the board itself, even in the presence of a disclaimer— although the Commission also allowed that the analysis might be different if the poster merely was linking to publicly available information. *Id.* Nothing about the Commission's analysis indicates that postings on an *appropriately named* personal page (i.e., one that does not purport to be on behalf of the board) would generally be problematic. And that accords with the numerous decisions cited above (all of which postdate the 2022 advisory opinion) in which the Commission has found no issue with social media posts discussing school matters from clearly personal accounts. *Accord McCooley*, No. C63-24, at 7 (explaining a board member's "social media post … made from her personal account that did not reference her Board membership" is not "offered in an official capacity" merely because it discusses school issues).

The other Commission decisions Nazarene cites, *see* ECF 1 ¶¶ 37-49, also involve circumstances clearly distinguishable from the conduct Nazarene apparently intends to engage in. *Pinto v. Cusato*, No. C74-23 (Sch. Ethics Comm'n July 22,

---

[5] This exhibit is not paginated. Thus, page numbers are assigned based on the order they appear.

13

2025) ("*Pinto I*"), involved a board member's social media comments about book banning, including some in which he explicitly referenced his role as a "member of the BOE" and did not otherwise issue a disclaimer. *Id.* at 2-3. After finding as a factual matter that the posts gave the impression they were made in the poster's capacity as a board member, and after emphasizing the "fact-sensitive" nature of its determination of an ethics violation under N.J. Stat. Ann. § 18A:12-24.1(e), the Commission concluded that this conduct violated the Act and recommended a reprimand. *Id.* at 6-7; *see also Pinto v. Cusato*, No. 445-25 SEC (Comm'r of Educ. Sep. 12, 2025) ("*Pinto II*") (concurring with the penalty of reprimand). These unique circumstances find no parallels in the conduct Nazarene intends to engage in, as she has described it in her own filings with this Court, since she apparently intends to speak in ways where it is clear she is speaking on behalf of herself rather than the Board.

The same is true of the *Treston* proceedings. There, a board member received a reprimand for violating N.J. Stat. Ann. § 18A:12-24.1(e) because a reasonable member of the public could conclude that his op-ed (which advocated for and against various board candidates in an upcoming election) gave the false impression of having been written on behalf of the board itself. *In re Treston*, No. 208-21 SEC, at 4 (Comm'r of Educ. Sept. 30, 2021) ("*Treston II*"). Although the board member used a disclaimer, his disclaimer was found to be inadequate in light of his use of "we"

14

and "our" to refer to the board, repeated references to board matters, and the standard disclaimer at the end of the op-ed distancing the website from authors of opinion pieces (which a reasonable person could interpret to indicate that the board member's disclaimer "was meant to distance the website—not the Board—from [his] endorsements"). *Id.*; *see also Treston I*, No. C71-18 at 4, 9, 12. Nothing about *Treston* undermines the broader principle that the Commission accepts statements made solely in a private capacity and that do not falsely give the impression that they are being made on behalf of the board itself. Indeed, the opinion itself explicitly reiterates this. *See Treston I*, No. C71-18, at 9; *Treston II*, No. 208-21, at 3-4.

Finally, Nazarene errs in relying on *In re Skurbe*, Nos. C75-21 and C37-22 (Sch. Ethics Comm'n July 22, 2025). The reprimanded board member in *Skurbe* had a pattern of posting about issues related to board business on a community Facebook group (including board business that she had "specific knowledge of due to her position on the Board"), only occasionally used a disclaimer, and frequently referenced the board as "we." *Id.* at 2-6, 10. Taking these facts together, the Commission concluded that it appeared that she spoke on behalf of the board in a way that had the potential to compromise the board (and that her official speech also used her position to secure unwarranted advantages for herself and/or a favored group). *Id.* at 10-11. By contrast, Nazarene's complaint suggests that she intends to express only *her* view of school or board-related issues, from a personal account

15

(and apparently with an appropriate disclaimer)—which existing Commission opinions already indicate she is free to do, so long as she uses language that avoids a reasonable member of the public perceiving that she is speaking outside her personal capacity. *Accord In re Malespina*, No. C22-22, at 2, 7 (Sch. Ethics Comm'n June 17, 2024) (dismissing complaint based on board member's op-ed about the board that used "we" and "ourselves" repeatedly to refer to the board; in context the board member's disclaimer still made it clear that she spoke only in her personal capacity and not on behalf of the board).

## II. Once the Court Accounts for Defendants' Actual Opinions Applying the School Ethics Act, the Court Must Dismiss the Complaint

### A. The Complaint Fails to Plausibly Allege Standing

Standing "is an 'irreducible constitutional minimum,' without which a court would not have jurisdiction to pass on the merits of the action." *Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To have standing, [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Pub. Int. Legal Found. v. Sec'y of the Commonwealth of Pa.*, 136 F.4th 456, 461 (3d Cir. 2025) (citing *Spokeo v. Robins*, 578 U.S. 330, 338 (2016)). "An allegation of future injury may suffice" to establish the injury-in-fact requirement "if the threatened injury is certainly impending, or there is a substantial

risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation modified); *see also Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (explaining that to obtain prospective pre-enforcement relief, a plaintiff "must establish a substantial risk of future injury that is traceable to the . . . defendants and likely to be redressed by an injunction against them" by proffering evidence that the defendants' "allegedly wrongful behavior w[ould] *likely* occur or continue" (emphasis and alteration in original)).

To satisfy the injury-in-fact requirement in a pre-enforcement challenge (like this one), the plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159 (*quoting Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). To be credible, the "threat of future enforcement" must be "substantial." *Id.* at 164. In assessing whether a perceived risk of future enforcement is "substantial" enough, the relevant inquiry is *not* whether the individual plaintiff subjectively feels chilled from engaging in her preferred activities. *See Reading v. North Hanover Twp.*, 124 F.4th 189, 198 (3d Cir. 2024). Otherwise, plaintiffs could manufacture Article III standing solely through their own fears and misconceptions. *See id.* Moreover, when a plaintiff's concern is solely with civil enforcement actions rather than criminal prosecution by the defendants—as here—courts are more stringent in requiring that plaintiffs

17

demonstrate a truly substantial risk necessitating immediate judicial action. *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 222-23 (3d Cir. 2023); *see also Driehaus*, 573 U.S. at 166 (concluding "the *combination* of [the] two threats"—civil proceedings and criminal prosecution—"suffice[d] to create an Article III injury."). After all, a plaintiff is always free to raise her constitutional arguments as a defense to any enforcement action the government might take. *See id.*

Although Nazarene's intended speech about school issues made on her own behalf is certainly affected with a First Amendment interest, she has not plausibly alleged that such speech is proscribed by the Act or that the risk of future enforcement is substantial. Nazarene traces the risk of future enforcement to "the state's interpretation of the [School] Ethics Act." ECF 1 ¶¶ 70-72. But, as addressed here and in the preliminary injunction briefing, Nazarene has misinterpreted the relevant Commission decisions by selectively citing only a few of them—and then failing to read those decisions within their proper context. If Nazarene truly just wishes to speak by posting on her personal Facebook page, and making comments where she is clearly speaking in her personal capacity and not on behalf of the Board (as her complaint appears to indicate), then the Commission's existing decisions

indicate no substantial risk that the Commission would restrict the type of speech she intends to engage in.[6]

It does not matter that Nazarene's fellow board members, and an unnamed school administrator, allegedly press a broader view of the Code of Ethics. *See* ECF 1 ¶¶ 62–63, 67. As the Third Circuit has recognized, "[t]he relevant analysis focuses on those responsible for enforcement, not those who make" complaints. *Greenberg v. Lehocky*, 81 F.4th 376, 387-88 (3d Cir. 2023). And that is especially so here, since the Commission evaluates all complaints for probable cause, and therefore performs a screening function to ensure complaints the Commission finds unmeritorious do not even proceed to a hearing.[7] *See id.* at 388 (recognizing that if an administrative

---

[6] Contrary to Nazarene's assertion elsewhere, *see* ECF 31 at 3, in assessing standing this Court need not "accept as valid" Nazarene's view that the statute, as the Commission interprets it, proscribes her speech. That is because there is a difference between accepting plaintiff's understanding of constitutional law, *see, e.g.*, *FEC v. Cruz*, 596 U.S. 289, 298 (2022) (accepting plaintiff's theory that the underlying statute was an unconstitutional *burden* on speech for purposes of standing), and accepting plaintiff's understanding of the kind of conduct that defendants are actually regulating, *see, e.g.*, *Driehaus*, 573 U.S. at 162-63 (conducting an independent judicial assessment of whether plaintiff's speech was arguably proscribed by the statute); *Reading*, 124 F.4th at 197-98 (rejecting the plaintiff's assertion that the defendants were likely to take enforcement action against her).

[7] In this case, as of the date Nazarene filed her lawsuit, the Commission had not yet completed its screening function with respect to the complaint filed against Nazarene. And as explained in the defendants' opposition to the motion for preliminary injunction, *see* Brief of Defendants, *Nazarene v. Dehmer et al.*, 1:25-cv-17770, at 30 (D.N.J. Jan. 6, 2026), once Nazarene filed this lawsuit, the defendants were statutorily required to place proceedings on that complaint into abeyance until this lawsuit is concluded.

scheme allows the enforcement body to review complaints before proceeding, the relevant views are those of the enforcement body); *id.* (distinguishing *Driehaus* on the basis that complaints in that scheme automatically triggered a hearing).

By contrast, the Supreme Court found a plaintiff satisfied the pleading requirements where the relevant civil enforcement body "already found probable cause to believe that [plaintiff] violated the statute" when it had made statements similar to those it "plann[ed] to disseminate in the future." *Driehaus*, 573 U.S. at 162. Here, consistent with N.J. Stat. Ann. § 18A:12-32, which prohibits the Commission from processing the complaint in a matter "actually pending in any court of law," the Commission has yet to make its probable cause determination regarding Nazarene's speech. Moreover, the Commission routinely finds no probable cause of a violation where board members have discussed school related issues on social media in their personal capacity. *See supra* [9]-[11].

Nazarene is even further off the mark when discussing training materials from the New Jersey School Board Association. *See* ECF 1 ¶ 50. That entity is neither a defendant in the case, nor an entity charged with interpreting and enforcing the Act, so its training materials in no way control the Commission (or the Commissioner of Education). And all the Association is alleged to have done is to generally advise school board members in a workshop against making Facebook posts. *See* ECF 1 ¶ 50. That is not actionable. Rather, the question is whether Nazarene faces a

substantial risk of enforcement by the body with actual enforcement authority for the speech in which she wishes to engage. She does not, and therefore she lacks Article III standing.

**B.    The Complaint Fails to State Any Actionable First Amendment Claim**

1. As an initial matter, Nazarene cannot prevail on her facial First Amendment challenge. "For a host of good reasons," the Supreme Court has intentionally "made facial challenges hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024); *see also CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 624 (3d Cir. 2013) ("[F]acial challenges are disfavored and should be considered sparingly."). Although the bar for a facial challenge is somewhat lowered in the First Amendment context, the test remains "rigorous." *Moody*, 603 U.S. at 723. A facial challenge under the First Amendment will only succeed where the "law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 723-24.

Nazarene's facial challenge to the School Ethics Act is undermined by her concession that "[n]either the School Ethics Act nor its [C]ode of [E]thics contains any provision or restrictions regarding school board members' communications with constituents about public school-related issues." ECF 1 ¶¶ 17, 92. So the Act is not unconstitutional "based on its text alone." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). Moreover, Nazarene takes no issue with the core of the Act—its conflict-of-interest provision—or even most aspects of the Code of Ethics. Because

the Act undisputedly regulates a broad range of conduct outside of the First Amendment's scope, Nazarene cannot establish that, "judged in relation to the statute's plainly legitimate sweep," the alleged unconstitutional applications of the Act "substantially outweigh" the legitimate ones. *Moody*, 603 U.S. at 723-24.

2. Nazarene's as-applied challenge likewise fails because she has not plausibly alleged the Act, as interpreted by the Commission, restricts the speech she alleges that she intends to engage in. As a threshold matter, a board member may freely speak in their personal capacity, even discussing school matters, so long as the speech cannot reasonably be perceived as official speech on behalf of the Board. And, Nazarene's complaint alleges only that she intends to speak in her personal capacity. As such, Nazarene cannot demonstrate that defendants are violating her First Amendment rights. Indeed, for a purported restriction on speech to be unconstitutional, the supposed restriction must actually *restrict* speech.

Furthermore, even putting aside that fundamental problem, defendants would, at most, restrict Nazarene's speech in her official capacity as a member of the board. As discussed above, the Commission has repeatedly disclaimed any authority to regulate board members' purely private speech. That distinction matters under the First Amendment because the government can permissibly regulate speech made in the course of official duties even if it could not make similar restrictions to private speech. *Cf. Garcetti v. Ceballos*, 547 U.S. 410, 418, 422 (2006) (recognizing that

22

government employers can restrict speech by government employees performing official duties, without triggering First Amendment concerns). Indeed, applying principles similar to those articulated in *Garcetti* makes sense in this context: as with a public employee, an elected official speaking in their official capacity is "not speaking as [a] citizen[] for First Amendment purposes" and is instead performing a role that was "created" by the government itself. *Id.* at 421-22.

Although Nazarene asserts an enhanced level of First Amendment protection on the grounds that she is an elected official, *see* ECF 1 ¶ 90, no case holds that elected officials have more protection relative to other official employees when they purport to speak in their *official* capacities. *See, e.g.*, *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478-79 (2022) (recognizing simply that official-capacity speech by elected officials, when used to censure the speech of other elected officials, was of equal constitutional dimension as the speech of the censured official and did not constitute unconstitutional retaliation); *Bond v. Floyd*, 385 U.S. 116, 118-25, 132-33 (1966) (recognizing that the state cannot censure a legislator for speech made as a private citizen before taking office, and holding that the state cannot apply a "stricter" standard to legislators than it would to private citizens); *Wood v. Georgia*, 370 U.S. 375, 393-94 (1962) (accepting as true that the statements at issue were made in the individual's capacity as a private citizen, rather than as an elected official, and rejecting the proposition that his elected office provided additional

23

justification for regulating his personal-capacity speech). And these cases certainly do not indicate that an elected official has enhanced protection if she purports to (falsely) speak on behalf of *someone else*.[8] Thus, under the correct test for restrictions on official capacity speech, Nazarene's First Amendment claim accordingly fails.

Even assuming Nazarene is correct in treating defendants' restrictions as content-based ones that trigger strict scrutiny under the First Amendment, defendants' actual policy passes constitutional muster. Under strict scrutiny, the question is whether the Commission's limited regulation of board member speech (1) serves a compelling government interest; (2) is narrowly tailored to serve that interest; and (3) is the least restrictive means of achieving that interest. *In re Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020).

New Jersey has a compelling interest in maintaining public confidence in the school system. *See Jerrytone v. Musto*, 167 F. App'x 295, 301 (3rd Cir. 2006) (recognizing "the strength of [this] interest" in the due process context); *see also* N.J.

---

[8] District courts in this Circuit and elsewhere are split on whether the *Garcetti* test applies to elected officials. *Compare*, *e.g.*, *Goode v. Camden City Sch. Dist.*, 2017 WL 2265146, at *4 (D.N.J. May 24, 2017), *with*, *e.g.*, *Werkheiser v. Pocono Twp.*, 210 F. Supp. 3d 633, 637-40 (M.D. Pa. 2016). The Third Circuit has not yet resolved the issue, instead concluding that the law is "not clearly established on this point." *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 177-81 (3d Cir. 2015). As noted in the main text, our position is not that *Garcetti* directly applies here. Rather, we think that the principles articulated in *Garcetti* are properly analogized to this context.

Stat. Ann. § 18A:12-22 (explaining that the Act is premised on the legislature's finding that "it is essential that the conduct of members of local boards of education and local school administrators hold the respect and confidence of the people."); *Barrow v. Greenville Indep. Sch. Dist.*, 332 F.3d 844, 848 (5th Cir. 2003) (recognizing a school district's "interest in public confidence in its schools is both legitimate and important"). And its interest in ensuring the integrity of its local school boards—government entities which set school policy in public schools—is heightened by its undisputed interest in public education. *See Phila. City Council v. Schweiker*, 40 F. App'x 672, 677 (3d Cir. 2002) ("It is well-known that education is a state policy of paramount importance."). To effectuate these interests in the actual and perceived impartiality and integrity of school boards, and to avoid members of the public being confused about which ideas and policies are attributable to a school board as a whole rather than to its individual members, the Commission interprets N.J. Stat. Ann. § 18A:12-24.1(e) to protect a board member's "right to free speech to express his own opinion," while still prohibiting board members from "convey[ing] the impression that [their] opinion is the Board's opinion." *Treston II*, No. 208-21, at 3.

The Commission's interpretation is also narrowly tailored to serve its interest in distinguishing the views of individual board members from the position of school boards as governmental bodies. Indeed, "[b]y any measure," the Commission's

interpretation "restricts a narrow slice of speech." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 452 (2015) (upholding Florida's restriction on judicial candidates prohibiting them from soliciting campaign contributions as narrowly tailored to the state's interest in the integrity of its judiciary). The Commission does not restrict board members from expressing their personal view on issues that relate to the board's business, operations, or elections—it merely requires that they ensure the public is not confused about who is speaking when they are expressing those views on their own behalf. And in any event, the First Amendment requires narrow tailoring, not perfect tailoring. *Id*. at 454 (internal citation omitted). The Commission's interpretation meets this standard because it strikes an appropriate "balance between First Amendment rights and the government's [compelling interest]"—its limitation on members speaking on behalf of the board is narrowly tailored to preserve the public's confidence in the board's integrity and impartiality on issues that have come up or may come up before it. *See In re Subpoena 2018R00776*, 947 F.3d at 158.

The Commission's narrow regulation of speech also distinguishes this case from those in which elected officials were restricted from (or retaliated against for) sharing their own opinion as elected officials. *See, e.g.*, *Bond*, 385 U.S. at 136-37 (elected official's First Amendment rights violated when fellow legislators refused to seat him due to his statements on the Vietnam war); *Wood*, 370 U.S. at 388-94

(contempt order against elected sheriff for out-of-court letter expressing his personal views on judicial conduct violated the sheriff's First Amendment rights). Indeed, the Commission's decisions make it clear that board members do not violate the Act merely by "tak[ing] positions on controversial political questions." *See Bond*, 385 U.S. at 136; *see also, e.g.*, *Rose v. Francis*, No. C35-20, at 3, 7 (Sch. Ethics Comm'n June 22, 2022) (finding no violation where board members wrote op-ed on race issues in the district, and identified themselves as board members, but they did not purport to speak on behalf of the board); *Schwartz v. Abedrabbo*, No. C40-21, at 3-6 (Sch. Ethics Comm'n Jan. 25, 2022) (no violation found when board members made personal comments about Palestine at a public board meeting); *see also Strehle v. Baird*, No. C91-23, at 5 (Sch. Ethics Comm'n July 23, 2024) (finding no probable cause for violations based on a board member's Facebook comments describing transgender students as mentally ill, and explaining that complainant's disagreement with the board member's views did not render the view an ethics violation).

Finally, the Act's restriction on speech, as interpreted by the Commission, is the least restrictive means of advancing the State's interest. "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000). Nazarene has suggested that the Supreme Court's decision in *Lindke v. Freed*, 601

27

U.S. 187 (2024), is such an alternative. *See* ECF 4-1 at 33. Yet the test in *Lindke* is materially indistinguishable from the test that the Commission *already* applies. In *Lindke*, the Court explained that an official's social media posts are attributable to the State for purposes of 42 U.S.C. § 1983 "only if the official" possessed actual authority to speak for the State, and then "purported to exercise that authority when he spoke on social media." 601 U.S. at 191. *Lindke*'s first prong is not directly applicable, as it is tied to § 1983's "bedrock requirement" that the official conduct complained of be "fairly attributable to the State." *Id.* at 198 (cleaned up). But its second prong is an appropriate analogy, and the Commission's approach mirrors the Court's guidance in assessing whether a board member "is speaking in his own voice." *Id.* at 201. Both the Court and the Commission place importance on the power of a disclaimer to clarify the capacity that an official speaks in. *See id.* at 202 (the use of an appropriate disclaimer would entitle an official "to a heavy (though not irrebuttable) presumption that all of the posts on his page were personal"); *In re Malespina,* No. C22-22, at 6-7 (Sch. Ethics Comm'n June 17, 2024) (social media activity does not violate the Act when the speaker uses an adequate disclaimer). In the absence of a clear disclaimer, both the Court and the Commission undertake "fact-specific" inquiries that account for the post's content and other factors. *See Lindke*, 601 U.S. at 203. The Commission's test considers both the post's content—i.e., whether it is school-related—and the broader fact-specific context for whether

28

there is a sufficient nexus to the board member's position on the board. *See supra* [9]-[11].[9]

Nazarene also suggests that the State could achieve its interests with "more speech"—i.e., having the board speak for itself to police boundaries between the board and others. *See* ECF 4-1 at 34-35.  As an initial matter, however, the State itself cannot force local school boards to engage in such speech. Plus, it would be exceedingly difficult for school boards to clarify their official positions in real time, such that the State's interest could be achieved. Other board members may be unaware of (or not regularly monitoring at all hours) all possible social media accounts and forums where this issue might arise. Moreover, because boards are multi-member bodies, fragmentation in the opinions of individual members may mean that the board as a whole has *no* opinion at all on a given issue.  And, the Code of Ethics—which was passed by the Legislature and the Governor signed into law— ensures that no member can singlehandedly speak for the board of education, other board members, and ultimately compromise the board.

Nazarene's proffered "more speech" policy is not a plausible solution to the issues she contends.  Much more effective and straightforward is the State's current

---

[9] Nazarene's second proposed alternative—that the state "interpret and apply the School Ethics Act in a common-sense … way"—simply restates *Lindke*'s presumption regarding a disclaimer and relies on her misunderstanding about when the Commission finds a disclaimer insufficient. *See* ECF 4-1 at 34.

policy, which encourages board members (who know about their own social media and other statements) to clarify in real time whether they are speaking in a personal or official capacity, and allows all board members to speak for themselves, but not falsely for the board itself.

## **CONCLUSION**

This Court should grant defendants' motion to dismiss.

Respectfully submitted,

JENNIFER DAVENPORT
ACTING ATTORNEY GENERAL
OF NEW JERSEY

By:    /s/ Luke D. Hertzel-Lagonikos
Luke D. Hertzel-Lagonikos
Deputy Attorney General

Date:  February 2, 2026

30